[No. F047313. Fifth Dist. June 9, 2006.]

ROBERT ZANE CURL, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE OF THE STATE OF CALIFORNIA, Real Party in Interest.

312

**COUNSEL**

Kevin G. Little and Samya Burney for Petitioner.

Kevin Bringuel and Adrienne Toomey as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Ward Campbell and Eric L. Christoffersen, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**ARDAIZ, P. J.—**

## INTRODUCTION

In 1993 petitioner Robert Zane Curl was convicted of the first degree murder of Richard Urban with the special circumstance that petitioner had previously been convicted (in 1977) of second degree murder. He was sentenced to death. His automatic appeal is presently pending before the California Supreme Court. In April of 2004 petitioner filed in superior court a motion for postconviction discovery pursuant to Penal Code section 1054.9.[1] After a flurry of briefing and supplemental briefing, and two hearings, the superior court issued its order on the motion. The court granted three of petitioner's 29 discovery requests (Nos. 8, 10 & B-1), partially granted two others (Nos. 1 & 11) and denied the remaining 24 requests (Nos. 2 through 7, 9, A-1, A-2, A-3, A-4, A-5, A-6, B-1, B-2, C-1, D-1, D-2, D-3, D-4, E-1, E-2, E-3 & E-4).

The court's ruling on petitioner's discovery requests did not include an explanation, for each numbered request, as to why the court was granting or denying the request. The court's ruling gave a general explanation or framework, at the beginning of its ruling, as to the court's understanding of section 1054.9. Part of that framework was that "the defendant should not be permitted to simply resubmit discovery requests which essentially duplicate what was requested at trial, absent a factual showing that (1) defendant's trial counsel has lost some of those discovery materials or that (2) the prosecution failed to turn over discovery materials it was obligated to produce at trial." The order then stated that the court would rule on the discovery requests in accordance with the explanation it had just given of its understanding of the requirements of the statute.

Petitioner contends that the court's order was erroneous because it required him, as a prerequisite to obtaining his section 1054.9 posttrial discovery, to make a showing that the prosecution had withheld exculpatory evidence from petitioner's defense at the time of petitioner's trial. As we shall explain, we agree with petitioner that the section 1054.9 discovery procedure contains no such requirement. We hold that a person who has been sentenced to "death or . . . life in prison without the possibility of parole" (§ 1054.9, subd. (a)) is not required to make a showing that the prosecution failed to turn over discovery materials it was obligated to produce at trial in order to obtain section 1054.9 postconviction discovery. We will grant the petition and will

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

direct the superior court to vacate its order on the section 1054.9 motion and to issue a new order in accordance with the views expressed in this opinion.

We will begin with overview of section 1054.9 as it has been interpreted and explained by the California Supreme Court in *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444]. We will then set forth verbatim the superior court's explanation, in its ruling, of its understanding of the statute and of *Steele*. Finally, we will explain why in our view the superior court misread the requirements of *Steele* and imposed obstacles to section 1054.9 postconviction discovery which the statute and *Steele* do not call for.

## PENAL CODE SECTION 1054.9

Penal Code section 1054.9 states:

"(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b).

"(b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial.

"(c) In response to a writ or motion satisfying the conditions in subdivision (a), court may order that the defendant be provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only upon a showing that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief. The procedures for obtaining access to physical evidence for purposes of postconviciton DNA testing are provided in Section 1405, and nothing in this section shall provide an alternative means of access to physical evidence for those purposes."

■ In *In re Steele, supra,* 32 Cal.4th 682, the California Supreme Court rejected the argument of the Attorney General that this statute was only a "file reconstruction statute" that permitted discovery limited to replacing materials that the defense once possessed but has since lost. "Although permitting defendants to reobtain items they once possessed but have lost is

one purpose, perhaps even the main purpose, of the statute, the statutory language is not so limited." (*Id.* at p. 693.) The court interpreted the meaning of the statute to be as follows: "[W]e interpret 1054.9 to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*Id.* at p. 697.)

The parties describe the above quoted passage of *Steele* as listing the four "categories" of materials discoverable under section 1054.9, and refer to these above quoted categories as "category 1," "category 2," "category 3" and "category 4." We will use the same nomenclature. Although the parties' arguments to this court do not attempt to categorize each of petitioner's discovery requests, there appears to be general agreement that many of them are "category 2" requests.

## THE SUPERIOR COURT'S RULING

The superior court's ruling stated in part as follows:

"Penal Code section 1054.9 provides that in connection with a post-conviction writ of habeas corpus and on a showing that good faith efforts to obtain discovery materials from trial counsel were unsuccessful, the court shall order that defendant be provided reasonable access to discovery materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at the time of trial.

"The California Supreme Court interpreted section 1054.9 in the recent case of *In re: Steele*[, *supra*,] 32 Cal.4th 682. The court identified several categories of discovery materials: those which the pro secution provided at the time of trial, but have since become lost to the defendant; materials the prosecution should have provided at the time of trial because they came within the scope of a discovery order, a statutory duty, or a constitutional duty to disclose; materials the prosecution should have provided at the time

of trial because the defense specifically requested them and was entitled to receive them; and materials the prosecution was under no obligation to provide because trial counsel for the defense did not tender a specific request, but to which the defendant would have been entitled at the time of trial had the defendant specifically requested them. (*Steele, supra,* [32 Cal.4th] at 697.)

"The *Steele* court also discussed Evidence Code section 664. That section provides that it is presumed that official duty has been regularly performed. The court stated that unless the defendant overcomes section 664's presumption as to specific evidence, there would be no discovery for the trial court to order that the prosecutor should have provided at trial. (*Steele, supra,* [32 Cal.4th] at 694.)

"The *Steele* court's opinion, unfortunately, raises as many questions as it answers. Defendant contends that *Steele* requires the prosecution to produce materials that defendant was or would have been entitled to at trial, but are presently unavailable to him from his trial counsel. He contends this obligation applies to all categories of materials encompassed by section 1054.9 and rejects the notion that Evidence Code section 664 limits that post-conviction discovery obligation under section 1054.9.

"The People urge a more narrow reading of *Steele* and a broader application of Evidence Code, section 664. As an example, the People contend that if the defense requested all statements from a particular witness and the prosecution disclosed no statements, the court should presume that no statements existed for the prosecution to disclose and that, absent any evidence rebutting the presumption that the prosecution properly fulfilled its obligation, a request for statements from that witness under section 1054.9 should be denied.

"The *Steele* opinion does not provide clarity to these issues.

"While this court agrees with defendant that section 1054.9 is a remedial statute, the court does not interpret its scope as broadly as defendant. To the extent that defendant's trial counsel has lost discovery materials that were provided at trial, section 1054.9 authorizes the court to make a discovery order for the purpose of recapturing that material. On the other hand, *the defendant should not be permitted to simply re-submit discovery requests which essentially duplicate what was requested at trial, absent a factual showing that (1) defendant's trial counsel has lost some of those discovery materials or that (2) the prosecution failed to turn over discovery materials it was obligated to produce at trial.* Additionally, if a new and different discovery request is made, which was not made at trial but could have been made at trial, and if such a request would have obligated the prosecution to

produce discovery material, then, in this post-conviction stage, the prosecution would be obligated to produce those materials even though they were never requested at the trial state. (*Steele*[, *supra*, 32 Cal.4th] at p. 697.)

"In ruling on the individual discovery requests herein, *this court interprets section 1054.9 as follows. If the current discovery request is substantially identical to what was requested or ordered (or required under Brady* [*v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]]), *then the court will deny the request unless defendant has presented facts overcoming the presumption of section 664 (by presenting evidence indicating that the prosecution did not fulfill its obligation to provide discovery at the trial level).* The other circumstances in which the motion would be granted is if the current request, while not substantially identical to one made at trial, nonetheless is one that could have been made at trial, and if it had been made at trial, the prosecution would have been obligated to produce the material. Finally, the last circumstance under which the motion would be granted is if the defense presents facts indicating that defense trial counsel has lost discovery material that was produced by the prosecution. (Of course, the People are under a continuing duty to supply *Brady* material, whether requested or not.)

"*The court will now rule on the individual discovery requests. A denial by this court of a discovery request indicates the court does not believe the request falls within any of the above-stated circumstances entitling it to discovery under section 1094.5* [*sic*]." (Italics added.)

## SECTION 1054.9 DOES NOT REQUIRE A PETITIONER TO DEMONSTRATE THAT DISCOVERABLE MATERIAL HAS BEEN WITHHELD

### A. *The Dispute*

The basic disagreement between petitioner Curl and the People (and the superior court) can be summarized as follows. Evidence Code section 664 provides in relevant part: "It is presumed that official duty has been regularly performed." The People contend that when a section 1054.9 postconviction discovery request is made, there is a presumption that the defendant already received, prior to his conviction, all the discovery materials the defendant requested and to which the defendant was entitled. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady v. Maryland, supra,* 373 U.S. at p. 87.) Indeed, the duty to disclose evidence

favorable to an accused "exists regardless of whether there has been a request for such evidence . . . ." (*People v. Morris* (1988) 46 Cal.3d 1, 30 [249 Cal.Rptr. 119, 756 P.2d 843].) "[T]he duty to disclose such evidence is applicable even though there has been no request by the accused [citation], and that the duty encompasses impeachment evidence as well as exculpatory evidence [citation]. Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [Citations.]" (*Strickler v. Greene* (1999) 527 U.S. 263, 280 [144 L.Ed.2d 286, 119 S.Ct. 1936].) Even "after a conviction the prosecutor . . . is bound by the ethics of his office to inform the appropriate authority of . . . information that casts doubt upon the correctness of the conviction." (*Imbler v. Pachtman* (1976) 424 U.S. 409, 427, fn. 25 [47 L.Ed.2d 128, 96 S.Ct. 984].) Our California Supreme Court has stated "[w]e expect and assume that if the People's lawyers have such information in this or any other case, they will disclose it promptly and fully." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1261 [275 Cal.Rptr. 729, 800 P.2d 1159].) The People thus contend that if a defendant makes a section 1054.9 request for postconviction discovery of materials falling within category 2 or category 3 of *Steele*'s four categories of materials discoverable under section 1054.9, the People may rely on the Evidence Code section 664 presumption that official duty has been regularly performed, and need not produce any such materials unless the defendant makes a showing that the People have withheld evidence favorable to the defendant or information that casts doubt upon the correctness of the defendant's conviction. We might paraphrase this position in colloquial terms as "if you can show us what we've withheld, we'll give it to you."

Petitioner contends that the Evidence Code section 664 presumption is inapplicable under these circumstances. Petitioner contends that the People cannot evade the discovery obligations mandated by section 1054.9 by asserting the Evidence Code section 664 presumption. As we shall explain, we agree with petitioner.

### B.  *Evidence Code Section 664*

Evidence Code section 664 appears in division 5 (Burden of Proof; Burden of Producing Evidence; Presumptions and Inferences), chapter 3 (Presumptions and Inferences), article 4 (Presumptions Affecting the Burden of Proof) of that code. The first Evidence Code section appearing in article 4 is Evidence Code section 660, which states that "[t]he presumptions established by this article . . . are presumptions affecting the burden of proof." (Evid. Code, § 660.) The Law Revision Commission Comment to Evidence Code section 660 states: "In some cases it may be difficult to determine whether a particular presumption is a presumption affecting the

burden of proof or presumption affecting the burden of producing evidence. To avoid uncertainty, it is desirable to classify as many presumptions as possible. Article 4 (§§ 660–668), therefore, lists several presumptions that are to be regarded as presumptions affecting the burden of proof. The list is not exclusive. Other statutory and common law presumptions that affect the burden of proof must await classification by the courts. [7 Cal. Law Revision Com. Rep. (1965) p. 1]". (Reprinted in 29B West's Ann. Evid. Code (1995) foll. § 660, p. 206.)

■ A defendant seeking section 1054.9 postconviction discovery is not seeking to prove anything and has no burden of proof. Such a defendant is merely seeking to obtain the materials the defendant is authorized by section 1054.9 to have "reasonable access to." (§ 1054.9, subd. (a).) The limitations on obtaining a court order granting reasonable access to the discoverable materials are described in section 1054.9 itself. There must be "prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment." (§ 1054.9, subd. (a).) The *Steele* court has interpreted this to mean that "a defendant is entitled to seek discovery if he or she is preparing to file the petition as well as after the petition has been filed." (*In re Steele, supra*, 32 Cal.4th at p. 691.) There must be "a case in which a sentence of death or of life in prison without the possibility of parole has been imposed." (§ 1054.9, subd. (a).) And there must be "a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful." (*Ibid.*) Nothing in the statute requires the defendant to demonstrate that a *Brady* violation has occurred in order to obtain reasonable access to the discovery materials.

### C. Gonzalez *and* Steele

The superior court's ruling appears to be the result of its interpretation of a paragraph on page 694 of *Steele* stating: "The Attorney General also argues that, as we pointed out in *People v. Gonzalez, supra*, 51 Cal.3d at pages 1260 and 1261, prosecutors have a continuing duty to disclose information favorable to the defense, and we expect and assume that they will perform this duty promptly and fully, and, moreover, that '[i]t is presumed that official duty has been regularly performed.' (Evid. Code, § 664.) Accordingly, he urges, any interpretation of section 1054.9 that extends to discovery the prosecution should have provided at time of trial makes it redundant of other law. However, the expectation and assumption we stated in *Gonzalez* merely mean that normally, and unless the defendant overcomes Evidence Code section 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial. None of this changes the plain meaning of the statute's inclusion of materials to which the defendant 'would have been entitled.' " (*In re Steele, supra*, 32 Cal.4th at p. 694.)

Our understanding of this paragraph is as follows. In *People v. Gonzalez, supra,* 51 Cal.3d 1179, the defendant was convicted of the first degree murder of a peace officer and was sentenced to death. While his appeal was pending, he moved in the trial court to obtain information about a jailhouse informant who had testified against him at his trial. The trial court granted the discovery order. The People sought and obtained a petition for writ of mandate directing the superior court to vacate its postjudgment discovery order. (*People v. Gonzalez, supra,* 51 Cal.3d at pp. 1255–1261.) The *Gonzalez* court noted that "[t]he trial court lacked jurisdiction to order 'free-floating' postjudgment discovery when no criminal proceeding was then pending before it." (*Id.* at p. 1256.) The *Gonzalez* defendant also had petitions for habeas corpus pending in the California Supreme Court. This too was not sufficient, under the law in effect at that time, to justify postjudgment discovery. "The related petitions for habeas corpus in this court also provide an inappropriate discovery vehicle. Whatever role court-ordered discovery might properly play in a habeas corpus proceeding, the bare filing of a claim for postconviction relief cannot trigger a right to unlimited discovery. A habeas corpus petition must be verified, and must state a 'prima facie case' for relief. That is, it must set forth specific facts which, if true, would require issuance of the writ. Any petition that does not meet these standards must be summarily denied, and it creates no cause or proceeding which would confer discovery jurisdiction. [Citations.]" (*People v. Gonzalez, supra,* 51 Cal.3d at pp. 1258–1259.) The *Gonzalez* court found no merit in the defendant's argument that "we create a 'Catch-22' by requiring him to state the specific facts supporting his claim *before* he may invoke any right to postjudgment discovery." (*Id.* at p. 1259.) "[T]here is no postconviction right to 'fish' through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist. [¶] . . . [¶] . . . [H]abeas corpus is an extraordinary, limited remedy against a presumptively fair and valid judgment. It is not a device for investigating possible claims, but a means for vindicating actual claims. Defendant made no concrete allegations, supported by specific facts, that Acker was implicated in the informant scandal. Hence, he asserts no ground for habeas-corpus-based discovery. [¶] . . . [¶] . . . [D]iscovery will not lie in habeas corpus with respect to issues upon which the petition fails to state a prima facie case for relief." (*People v. Gonzalez, supra,* 51 Cal.3d at pp. 1259–1261, fn. omitted.)

The *Steele* decision pointed out that the new section 1054.9, which became effective on January 1, 2003, "modifies" the "rule" stated in *Gonzalez* that "after the judgment had become final, nothing was pending in the trial court to which a discovery motion may attach, and that the defendant had to state a prima facie case for relief before he may receive discovery." (*In re Steele, supra,* 32 Cal.4th at p. 691.) "Defendants are now entitled to discovery to assist in stating a prima facie case for relief." (*Ibid.*) The *Steele*

decision addressed some procedural concerns about the statute, and then turned to the issue of the scope of the discovery afforded by the statute. At pages 693 to 697 of the opinion the *Steele* court addressed the scope of the discovery afforded by the statute, and it is here that court rejected the Attorney General's argument that section 1054.9 is merely a file reconstruction statute and concluded that the statute provides for discovery of what the parties refer to as *Steele*'s four "categories" of discoverable materials. (See *In re Steele, supra*, 32 Cal.4th at p. 697.) It is in the course of the Supreme Court's analysis of the scope of the statute that the page 694 paragraph mentioning Evidence Code section 664 appears. ▮ Our understanding of this paragraph, and specifically of the words "normally, and unless the defendant overcomes Evidence Code § 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial," is that under section 1054.9 a defendant may "overcome" any Evidence Code section 664 presumption that official duty has been regularly performed by requesting a discoverable item and receiving it.[2] If the discoverable item requested does not exist or is not in the possession of the prosecution or of law enforcement authorities involved in the investigation or prosecution of the case, the prosecution may simply say so.

The *Steele* opinion itself appears to acknowledge that section 1054.9 is intended to provide a vehicle for obtaining discoverable items that may have been improperly withheld.

"The plain language here does not limit the discovery materials to materials the defense once actually possessed to the exclusion of materials the defense did not possess but to which it would have been entitled at time of trial. Moreover, the legislative history does not strongly support a narrow interpretation. Various committee reports on the bill that became section 1054.9 discuss the problem that occurs when a defendant's files are lost or destroyed after trial; they note that the bill would provide a means to reconstruct destroyed or missing files. *The reports do not mention other problems such as the possibility that prosecutors did not fulfill their duty to provide discovery. But this circumstance simply means that the bill's main focus was to permit reconstruction of lost files, not that the bill was limited to solving that problem.* Indeed, one of the reports the Attorney General cites also states, 'The purpose of the proposed legislation is to provide a reasonable avenue for habeas [corpus] counsel to obtain documents to which trial counsel

---

[2] Provided, of course, that the other requirements of the statute have been met. These include the requirement that "good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful." (§ 1054.9, subd. (a).) We do not read the word "unsuccessful," as real party in interest does, to require a showing by a moving party making a category 2 request that the prosecution has withheld evidence favorable to the moving party.

was already legally entitled.' (Sen. Rules Com., Off. of Sen. Floor analyses, Rep. on Sen. Bill 1391 [2001–2002 Reg. Sess.], as amended Aug. 26, 2002, p. 5.) Obtaining documents to which trial counsel was legally entitled is broader than mere file reconstruction." (*In re Steele, supra,* 32 Cal.4th at p. 694, some italics added.)

The facts of the *Steele* case itself also appear to us to support petitioner's view of section 1054.9, and to rebut the view of the respondent and the real party in interest that the court can rely on Evidence Code section 664 to require the defendant to show that evidence has been withheld as a condition to granting a "category 2" or "category 3" postconviction discovery request. In *Steele* the defendant sought discovery of materials "regarding his own behavior in prison." (*In re Steele, supra,* 32 Cal.4th at p. 688.) The court stated: "[I]f the defense had specifically requested the materials at time of trial (the record is unclear), the prosecution would have been obligated to provide them if it possessed them. Accordingly, we conclude that petitioner is entitled to discovery of materials within the scope of the current request that petitioner does not now possess but that the prosecution and law enforcement authorities involved in the case currently possess, if any exist." (*Id.* at p. 689.) The court thus concluded that the case before it involved either a category 3 request (materials the prosecution should have provided at trial because the defense requested them and was entitled to receive them) or a category 4 request (materials the prosecution had no obligation to provide at trial absent a request for them, but to which the defendant would have been entitled at trial had the defense requested them). But even though the court assumed that it might well be dealing with a category 3 request, the court did not presume that "official duty has been regularly performed" (Evid. Code, § 664) and deny the section 1054.9 request. The court instead remanded the matter to the superior court and directed that court to issue an order directing the People to provide the requested materials "if any exist." (*In re Steele, supra,* 32 Cal.4th at p. 703.)

The *Steele* court explicitly stated that it did not matter whether the discoverable materials had been requested at the time of trial. "On the instant record, it is not clear whether petitioner specifically requested additional records at the time of trial. Whether the defense did make such a request does not matter for purposes of discovery under section 1054.9. If the defense *had* specifically requested the prosecution to provide all of petitioner's prison records in its possession, assuming the records were otherwise material, the prosecution would have been obligated to provide them. . . . Accordingly, this is information to which petitioner would have been entitled at the time of trial had he specifically requested it." (*In re Steele, supra,* 32 Cal.4th at p. 702.) In the case presently before us, the superior court thus erred in relying on Evidence Code section 664 as a ground upon which to deny petitioner's discovery requests.

### D.   *The Interpretation of* Steele *Advocated by the People Would Defeat the Purpose of the Statute*

The Attorney General's position is based upon the language of *Steele* stating that "normally, and unless the defendant overcomes Evidence Code section 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial." (*In re Steele, supra,* 32 Cal.4th at p. 694.) In essence, and as acknowledged by the Deputy Attorney General at argument, the position of the People is that until there is some evidence presented that material to which the defense was or would be entitled was not turned over, there is no basis for an order of discovery. This is because, in the words of the People's memorandum of points and authorities in support of the return to our order to show cause, "Evidence Code section 664 requires a presumption that no additional materials existed for the prosecution to disclose."

With respect, the court finds the argument of the People effectively uses a presumption of appropriate performance of duty in the place of the assurance of performance of duty the statute was, in part, designed to address. We would ask a rhetorical question: What is the point of the postconviction discovery envisioned by section 1054.9 if it is not, at least in part, to ascertain what was not turned over to trial counsel? Obviously, if material was not turned over, trial counsel was not aware that material had not been turned over. If trial counsel had been aware, he or she would have or should have demanded the material. If it is presumed that everything that was supposed to be turned over was in fact turned over then negligence and, worse, misconduct would not be disclosed absent some serendipitous event.

*In re Steele* provides "defendants are now entitled to discovery to assist in stating a prima facie case for relief." (*In re Steele, supra,* 32 Cal.4th at p. 691.) One of the evident purposes of the statute is to ensure that postconviction counsel has the opportunity to ascertain before preparation of a habeas corpus petition whether material was not turned over to trial counsel. The statute as interpreted by *Steele* is intended to facilitate the efforts of a qualifying defendant and his postconviction counsel to 1) ascertain what material was in the hands of the defendant's trial attorney that was received from the prosecution; 2) ascertain whether the prosecution failed willfully or negligently to turn over discoverable materials to the defense pursuant to the prosecution's *Brady* obligations; and 3) ascertain whether defense trial counsel failed to specifically request materials in the hands of the prosecution which should have been given if requested in order to determine whether effective assistance of counsel was provided.

Some basic principles seem too often lost in the litigation process. A criminal trial is not a game. The concern of the prosecution is to ensure a fair

trial and to seek a result in which confidence can be held. The objective of the prosecution is not simply to win; it is to reach an outcome that is supported by an evaluation of all of the admissible evidence.

The regrettable reality is that sometimes prosecutors do not turn over materials to which the defense is entitled. The reality is that prosecutors do not always know of the existence of discoverable materials unless they ask the appropriate agency. The reality is that even if prosecutors ask the appropriate agency, prosecutors are not always made aware of the existence of such materials for evident and obvious reasons both benign and inappropriate. The reality is that the defense is entitled to know what the evidence against a defendant is—both inculpatory and exculpatory. The reality is that the defense is entitled to know what materials exist that may aid in the preparation of the defense. The reality is that the prosecution does not always know what will aid the defense because the prosecution does not always know what the defense is and the prosecution has no way of knowing this unless the defense asks for the material the defense needs.

The reality is also that the prosecution almost always knows what evidence is exculpatory in nature. Fundamentally, if the prosecution has failed in its *Brady* duty, the defense has no way of knowing this in a postconviction proceeding unless it asks for all relevant material and unless the prosecution undertakes an evaluation of its file to determine if all material subject to *Brady* disclosure was turned over.

██ It is axiomatic that one cannot prove what was not turned over if one does not know what was not turned over. Likewise it is simply nonsensical to apply a presumption that a duty was regularly performed for purposes of barring a request for materials that would show a duty was not regularly performed. There simply is no basis for such a presumption absent an assertion by the People that a review of the file does not disclose anything that was not turned over. We find no basis for the employment of an Evidence Code section 664 presumption absent such an express assertion by the People, and we find no basis for imposition of a burden of proof on the defense to show undisclosed material exists absent an express assertion by the prosecution that they possess no such materials. We conclude that the *Steele* court was simply acknowledging the obvious: that once a prosecutor affirms that there is no discoverable material that has not appropriately been turned over, then there is nothing for the trial court to specifically order turned over absent some showing by the defense that items exist that were not turned over. We do not conclude that the court in *Steele* was endorsing a presumption that postconviction defense counsel must make an affirmative showing of the existence of what was not turned over when the purpose of the statute is to allow postconviction defense counsel to ascertain whether anything was not turned over.

## OTHER ISSUES

Petitioner raises three other issues. First, he contends that the court "failed to clarify whether the California Department of Corrections, the Beverly Hills Police Department, and the Los Angeles Sheriff's Office were subject to § 1054.9." Petitioner fails to demonstrate how this purported failure caused an erroneous ruling, but in any event the People concede that these three entities are "law enforcement authorities" within the meaning of section 1054.9 (or "law enforcement authorities who were involved in the investigation or prosecution of the case" (*In re Steele, supra,* 32 Cal.4th at p. 696)).

Second, he contends that the superior court erred in denying his discovery requests because all of the requested items fall within *Steele* categories 2 and 4 and "it was undisputed that petitioner had made the requisite 'good faith efforts' showing with respect to each request." We do not read the superior court's order as concluding that "good faith efforts to obtain discovery from trial counsel were made and were unsuccessful." (§ 1054.9, subd. (a).) The ruling nowhere so states. What it does say is "defendant should not be permitted to simply resubmit discovery requests which essentially duplicate what was requested at trial, absent a factual showing that (1) defendant's trial counsel has lost some of those discovery materials or that (2) the prosecution failed to turn over discovery materials it was obligated to produce at trial." The ruling goes on to say that the court will deny discovery on such "duplicate" requests "unless defendant has presented facts overcoming the presumption of [Evidence Code] section 664 (by presenting evidence indicating that the prosecution did not fulfill its obligation to provide discovery at the trial level)" or unless "the defense presents facts indicating that defense trial counsel has lost discovery material that was produced by the prosecution." Not having found any such "facts," the superior court apparently saw no need to address whether any "good faith efforts" had been made.

Third, petitioner contends that the superior court erred in finding that the Los Angeles County District Attorney's Office was not an "involved" agency within the meaning of *Steele.* As we have already noted, the superior court's ruling stated that a "denial by this court of a discovery request indicates that the court does not believe the request falls within any of the above-stated circumstances entitling it to discovery under section 1094.5 [*sic*]." On one of petitioner's requests (D-2), the court's denial of the request also stated: "The court concludes that the Los Angeles County District Attorney's Office was not an involved agency within the meaning of the *Steele* opinion." The court's ruling appears to indicate that even if the court had concluded that the Los Angeles County District Attorney's Office was an involved agency, the court would have denied this request anyway. Given the way in which the superior court's ruling was constructed, and in light of the fact that we have

found the court's stated rationale for its ruling to be erroneous, we deem the prudent course to direct the superior court to vacate its January 18, 2005 ruling on petitioner's motion for section 1054.9 postconviction discovery in its entirety, and to direct that court to conduct further proceedings on the motion in accordance with the views expressed in this opinion.

## DISPOSITION

The petition is granted insofar as it seeks a writ of mandate directing the superior court to vacate its order denying in part petitioner's motion for postconviction discovery. The superior court is directed to vacate its January 18, 2005 order on petitioner's motion for section 1054.9 discovery, and to conduct further proceedings on that motion in accordance with the views expressed in this opinion.

Harris, J., and Cornell, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 20, 2006, S145195. Baxter, J., did not participate therein.