[No. C051946. Third Dist. Nov. 30, 2006.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
ROBERT EDWARD MAURY, Real Party in Interest.

COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Ward A. Campbell and Eric L. Christoffersen, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Michael Laurence, Charles J. Press and Kevin Bringuel for Real Party in Interest.

OPINION

ROBIE, J.—Penal Code[1] section 1054.9 allows persons subject to a sentence of death or life in prison without the possibility of parole to file a motion for postconviction discovery to assist in seeking a writ of habeas corpus or an order vacating the judgment. The question in this case is whether section 1054.9 requires a defendant to show, as a prerequisite to obtaining an order for discovery materials under the statute, that the requested materials actually exist and are in the possession of the prosecution and/or the relevant law enforcement authorities, or, at the very least, that a defendant has a good faith

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

basis to so believe. As will be explained, we believe the answer to this question is "no."

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989 in Shasta County, real party in interest Robert Edward Maury was convicted of the murder of three women and sentenced to death. In 2003, the California Supreme Court affirmed his convictions and sentence. (See *People v. Maury* (2003) 30 Cal.4th 342 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

In August 2005, Maury filed a discovery motion pursuant to section 1054.9. He asked the court to order the prosecution to provide 22 items of discovery "to the extent that such materials are in the actual or constructive possession, custody, or control of the District Attorney or any law enforcement agency involved in any aspect of the case."[2]

The prosecution opposed the motion, arguing, among other things, that Maury needed to show he had a good faith basis for believing the requested materials actually existed and were in the possession of the prosecution.

After four hearings on the discovery request, the court granted the motion, subject to the limitation that the prosecution need not produce any materials the court deemed privileged. The court explained to the prosecution that if the requested materials did not exist or were not in its possession, then "compliance with the discovery request would be as simple . . . as an indication . . . that having made [a] good faith effort to locate the documents requested, you've made a determination that you're not in possession or that those documents don't exist." The court then ordered Maury to submit an amended proposed discovery order.

On January 24, 2006, the court signed and filed the amended discovery order. The order specified that the prosecution had the option of either

---

[2] The motion included requests for such items as "[a]ll discovery materials that should have been provided or made available to the defense, including the approximately five missing pages referenced at Reporter's Transcript page 1074," "[a]ll information and tangible things relating to all photographic lineups administered in the case, including the photographs used, the name of the person(s) to whom they were shown, the person's statements, witnesses to the lineup, and all notes and reports relating to the lineup," and "[a]ll information, tangible things, and identifying information regarding everyone investigated, detained, or arrested as a person of interest or suspect during the investigation of the charged crimes."

"reviewing the files itself and certifying in writing the non-existence, loss, or destruction of any material covered by th[e] [o]rder" or permitting Maury's attorney or designated representative to review the file.

On February 21, 2006, the People commenced this proceeding by filing a petition for writ of mandate in this court challenging respondent court's discovery order. We stayed the order and issued an alternative writ of mandate.

DISCUSSION

I

*Section 1054.9*

As relevant here, section 1054.9 provides as follows:

"(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c) [relating to access to physical evidence for the purpose of examination], order that the defendant be provided reasonable access to any of the materials described in subdivision (b).

"(b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

In *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444] —the only case from our Supreme Court to address section 1054.9—the People argued that section 1054.9 is "only a 'file reconstruction statute,' and the discovery it permits is limited to replacing materials that the defense once possessed but has since lost." (*Steele*, at p. 693.) In rejecting this argument, the court delineated four categories of discovery materials to which a defendant is entitled under section 1054.9. (*Steele*, at p. 697.) The *Steele* court explained: "we interpret section 1054.9 to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possession of

the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant [category No. 1 materials]; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence [category No. 2 materials]; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them [category No. 3 materials]; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them [category No. 4 materials]." (*Ibid.*) With these four categories in mind, we turn to the People's contentions.

II

*To Obtain Access to Discovery Materials Pursuant to*
*Section 1054.9, a Defendant Is Not Required to Show That*
*the Materials Actually Exist and Are in the Possession of the*
*Prosecution and/or Relevant Law Enforcement Authorities or*
*That Defendant Has a Good Faith Basis to So Believe*

As noted, subdivision (a) of section 1054.9 authorizes court-ordered postconviction discovery for defendants subject to a sentence of death or life in prison without the possibility of parole "on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful."

The People contend the court erred in failing to require Maury to establish, as a prerequisite to court-ordered postconviction discovery, that his efforts to obtain the materials from trial counsel were "unsuccessful." In the People's view, "[t]o make such a showing, Maury must establish that some discovery materials actually exist beyond those obtained from trial counsel. Unless additional discovery materials are shown to exist, there is no basis to conclude that Maury was unsuccessful in obtaining the discovery materials defined by section 1054.9."

█ Although the People purport to premise their argument on the word "unsuccessful," a careful examination of the argument reveals that it actually rests more substantially on the definition of "discovery materials" contained in subdivision (b) of section 1054.9. Subdivision (b) expressly defines "discovery materials" as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been

entitled at time of trial." As the Supreme Court explained in *Steele*, this definition encompasses only those materials "in their possession *currently*." (*In re Steele, supra*, 32 Cal.4th at p. 695.) According to the People, under this definition "a finite set of [discovery] materials actually exists for every case"—specifically, those materials to which the defendant would have been entitled at time of trial that are currently in the possession of the prosecution or of a law enforcement authority that was involved in the investigation or prosecution of the case.

Under subdivision (a) of the statute, a fundamental prerequisite to obtaining a discovery order is "a showing that good faith efforts to obtain *discovery materials* from trial counsel were made and were unsuccessful." (§ 1054.9, subd. (a), italics added.) By the People's reasoning, a defendant cannot establish the requisite lack of success "[u]nless [he] establishes that some materials from th[e] finite universe [of 'discovery materials'] were missing from trial counsel's files." In other words, the defendant must prove that the material he is seeking is "discovery material" in the first place by proving not only that the material is something to which he would have been entitled at time of trial, but also that the material is currently "in the possession of the prosecution and law enforcement authorities." Under this reasoning, if the material does not exist, then it cannot be "in the possession of the prosecution and law enforcement authorities" and is therefore not "discovery material" subject to discovery under section 1054.9.

Accordingly, under the People's reading of the statute, before he can obtain a discovery order under section 1054.9, the defendant must prove that any particular material or category of material to which he seeks access: (1) is something to which he would have been entitled at time of trial; (2) actually exists; (3) is currently in the possession of the prosecution and law enforcement authorities that were involved in the investigation or prosecution of the case; and (4) was not provided to him by trial counsel, despite his good faith efforts to obtain the material from trial counsel.

Although this interpretation of the statute has some superficial appeal, it erects a standard that is virtually impossible, if not absolutely impossible, for a defendant to meet. This is so because a defendant cannot prove what materials *actually and currently* exist in the possession of the prosecution and/or law enforcement authorities, unless, perhaps, the prosecution or a relevant law enforcement authority revealed its possession of those materials to the defendant immediately before the filing of the section 1054.9 motion. Even then, the defendant cannot prove the requested materials *actually* exist at the time the court rules on the motion; that is information only the prosecution and/or the law enforcement authorities themselves have until they disclose the materials. If the People's construction of the statute were to

prevail, then even the "main focus" of section 1054.9—"to permit reconstruction of lost files" (*In re Steele, supra,* 32 Cal.4th at p. 694)—would be virtually impossible for a defendant to achieve, because he could almost never *prove* what materials he formerly had (even assuming he could specifically identify materials he no longer possesses) are *currently* in the possession of the prosecution and relevant law enforcement agencies.

■ "Our obligation is to interpret the statute 'to effectuate the purpose of the law.' [Citation.] '[S]tatutes must be construed in a reasonable and common sense manner consistent with their apparent purpose and the legislative intent underlying them—one practical, rather than technical, and one promoting a wise policy rather than mischief or absurdity.' " (*Weidenfeller v. Star & Garter* (1991) 1 Cal.App.4th 1, 5–6 [2 Cal.Rptr.2d 14].)

Here, requiring defendant to prove what materials actually, currently exist in the possession of the prosecution and/or law enforcement authorities before allowing him access to those materials would defeat the purpose of section 1054.9 by preventing most, if not all, discovery under the statute. Indeed, even the People implicitly recognize the nearly impossible burden their interpretation of the statute would impose on a defendant because, although they initially argue for proof the materials "actually exist," their argument later morphs—without explanation—into an argument that a defendant needs to show only "that the requested materials likely exist" or a "good faith basis to believe that the requested materials actually exist," instead of *actual existence* of the materials. Although a "good faith belief in the existence of" or "likelihood of existence" standard might be more workable than an "actual existence" standard, the former standards have no basis in the language of the statute. Based on the statutory definition of "discovery materials," as interpreted in *Steele,* either the defendant has to show that what he is requesting qualifies as "discovery material"—that is, something currently in the possession of the prosecution or law enforcement authorities—or he does not. There is simply no basis for us to read into the statute the requirement of showing a "good faith basis" for believing the materials exist, or proof that they "likely" exist.

Irrespective of category No. 1 materials—which the defendant used to have but does not have anymore—and category No. 4 materials—which the defendant never had but would have been entitled to if he had asked for them—the People argue that a requirement of proof of the actual existence of category Nos. 2 and 3 materials is supported by Evidence Code section 664. That statute provides for an evidentiary presumption "that official duty has been regularly performed." (Evid. Code, § 664.) According to the People, "when a petitioner seeks discovery under section 1054.9 for materials in . . . categor[y Nos. 2 and 3, which should have been provided at trial but were

not,] the petitioner is necessarily claiming that a discovery violation occurred, else the materials would have been in trial counsel's files." In the People's view, Evidence Code section 664 requires the court to presume that a discovery violation did *not* occur and places the burden on the defendant to prove that one *did* occur, which can be accomplished only by proving that materials exist which the prosecution should have turned over at trial but did not.

We begin by noting that when a defendant seeks discovery of materials that should have been provided at trial, he is not necessarily claiming that a discovery violation occurred. Given that a substantial amount of time may pass between a capital trial and the defendant's subsequent request for discovery under section 1054.9 (here, 15 years elapsed), it is possible that a defendant seeking discovery under section 1054.9 will simply have no idea whether the materials he obtained from trial counsel—assuming he obtained any at all—amount to all of the materials the prosecution turned over during trial. Absent such knowledge, a request for materials that should have been provided at trial does not imply a discovery violation by the prosecution.

But what if the defendant is seeking discovery of materials that should have been provided at trial and asserts in his motion that these materials were never provided? In such a circumstance, the defendant is expressly requesting category No. 2 and/or category No. 3 materials, and there are two possible explanations: either no such materials existed or such materials *did* exist, but the prosecution failed to comply with the court's order to disclose them. In the People's view, in requesting discovery of such materials under section 1054.9, the defendant is necessarily implying that the second explanation is the correct one—that such materials do exist, but the prosecution failed to comply with the court's order to disclose them, i.e., a discovery violation occurred. According to the People, "Evidence Code section 664 should apply when a discovery violation is alleged. Absent evidence to the contrary, a prosecutor should be presumed to have properly fulfilled all discovery obligations at trial."

There is some support in *Steele* for the People's argument that Evidence Code section 664 has a bearing on a discovery motion under section 1054.9. In *Steele*, while arguing that section 1054.9 should be interpreted as "only a 'file reconstruction statute,' " the People asserted that any broader interpretation of the statute would make it "redundant of other law" because "prosecutors have a continuing duty to disclose information favorable to the defense, and we expect and assume that they will perform this duty promptly and fully, and, moreover, . . . '[i]t is presumed that official duty has been regularly performed.' (Evid. Code, § 664.)" (*In re Steele, supra,* 32 Cal.4th at pp. 693,

694.) The Supreme Court rejected this argument as a basis for interpreting the statute, noting that "[n]one of this changes the plain meaning of the statute's inclusion of materials to which the defendant 'would have been entitled.' " (*Id.* at p. 694.) Before doing so, however, the court made this observation: "the expectation and assumption [that prosecutors will promptly and fully disclose information favorable to the defense] merely mean that normally, and unless the defendant overcomes Evidence Code section 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial." (*Steele,* at p. 694.)

Of course, this passage from *Steele* is dictum because the court there was addressing whether section 1054.9 should be interpreted as only a file reconstruction statute, not what must be shown by a defendant to prevail on a section 1054.9 motion when the material sought is something the trial court should have provided at time of trial. Indeed, the court in *Steele* ultimately determined that, with respect to the material at issue there (material regarding the defendant's behavior in prison), it did "not matter for purposes of discovery under section 1054.9" whether the defendant requested that material at the time of trial, because even if he did not request it he "would have been entitled [to the material] at time of trial had he specifically requested it." (*In re Steele, supra,* 32 Cal.4th at p. 702.) What this means is that the Supreme Court ultimately treated the materials at issue in *Steele* as category No. 4 materials. Consequently, the *Steele* court had no occasion to determine what showing a defendant must make when the materials sought fall in category No. 2 and/or No. 3, and the court's statement about the operation of Evidence Code section 664 in those instances is dictum.

■ Although we are not bound by dictum from our Supreme Court (*State of California v. Superior Court* (2000) 78 Cal.App.4th 1019, 1029 [93 Cal.Rptr.2d 276]), "When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed." (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].) Here, it does not appear from the opinion in *Steele* that the Supreme Court's brief statement about Evidence Code section 664's application to discovery motions under section 1054.9 was based on such an analysis of the issue. Accordingly, we will now consider whether the official duty presumption of Evidence Code section 664 has any bearing on a motion for discovery under section 1054.9.

■ "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (a).) The official duty presumption is a

presumption affecting the burden of proof. (Evid. Code, § 660.) A presumption affecting the burden of proof "impose[s] upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (Evid. Code, § 606.)

In the People's view, a defendant's request in a motion under section 1054.9 for materials that should have been provided at time of trial triggers the presumption in Evidence Code section 664, requiring the court to assume, as a matter of fact, that the prosecution regularly performed its official duty and provided the defendant with whatever materials the prosecution had that it was required to provide. Thus, in the People's view, the court must assume that the prosecution possesses no additional materials, and it falls to the defendant to prove otherwise. In this way, the People argue, Evidence Code section 664 requires the defendant to prove the actual existence of category No. 2 and/or No. 3 materials that were not previously provided before the court can order discovery of those materials under section 1054.9.

This argument is much like the People's previous argument that the Legislature intended to require the defendant to prove the actual existence of the documents he is seeking before the court can order discovery under section 1054.9. Although both arguments have some superficial appeal, acceptance of either of them would essentially eviscerate the discovery rights the statute was designed to provide.

As we explained above, a defendant in a given case may have no idea whether the materials he obtained from trial counsel amount to all of the materials the prosecution turned over during trial. Consider, for example, a defendant who can prove there was a discovery order issued at time of trial but does not know if the materials he has obtained from trial counsel include all of the materials the prosecutor produced in compliance with that order. This defendant makes a motion for discovery under section 1054.9, explains his situation, and requests all of the materials that were subject to the discovery order. In the People's view, proof of the discovery order triggers the official duty presumption of Evidence Code section 664 and requires the court to assume that the prosecution has already turned over everything that it was required to turn over under that order. It then falls to the defendant to prove either that the prosecution did not turn over everything it was supposed to (i.e., that he is seeking category No. 2 materials) *or* that he did not receive from his trial counsel everything that the prosecution turned over (i.e., that he is seeking category No. 1 materials). Regardless of the alternative, however, the defendant is put to the burden of proving the existence of documents he does not have—a burden he may have no means of meeting.

This example shows that the impact of the application of Evidence Code section 664 to a motion for discovery under section 1054.9 extends

beyond category Nos. 2 and 3 materials to category No. 1 materials, because the defendant in a given case may have no basis for distinguishing between the various categories. Thus, as we have already observed, if the People's argument were to prevail, even the "main focus" of section 1054.9—"to permit reconstruction of lost files" (*In re Steele, supra*, 32 Cal.4th at p. 694)—could be virtually impossible for a defendant to achieve. We will not attribute to the Legislature an intent to create a statutory scheme for discovery that in many cases will achieve nothing. Consequently, we conclude the Legislature did not intend the official duty presumption of Evidence Code section 664 to require a defendant seeking discovery under section 1054.9 to prove the actual existence of materials in the possession of the prosecution and/or the relevant law enforcement authorities before the court can order discovery under the statute.

■ In summary, we conclude that in moving for discovery under section 1054.9, the defendant does not have to prove the actual existence (or a good faith belief in the actual existence) of discovery materials in the possession of the prosecution and/or the relevant law enforcement authorities as a prerequisite to obtaining an order for discovery under the statute.

### III

*The People Have Forfeited Any Challenge to the Discovery*
*Order As It Relates to Specific Material*

In their replication, the People purport to challenge the discovery of specific material the court ordered the prosecution to turn over. They point to what they believe is an example of the court's abuse of discretion with respect to granting discovery item No. 1 for "[a]ll discovery materials provided or made available to the defense at or before trial."

■ While such an order certainly may be challenged in a writ proceeding such as the one here, the challenge must come in the writ petition itself and cannot be raised for the first time in the replication. (See *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788] [an argument raised for the first time in a reply brief without a showing of good cause may be deemed to be forfeited].) Since the People failed to make their challenge to specific items of discovery in their petition and have not shown good cause for so doing, we will not consider their belated challenge to the propriety of granting specific discovery requests in their replication.

## DISPOSITION

The stay is lifted, the alternative writ is discharged, and the petition for writ of mandate is denied.[3]

Scotland, P. J., and Sims, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 21, 2007, S149406.

---

[3] Given our conclusion, we need not reach Maury's argument that the People's petition for writ of mandate was untimely filed.