[No. S165522. Aug. 26, 2010.]

LEE MAX BARNETT, Petitioner, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Quin Denvir and Daniel J. Broderick, Federal Defenders, Jennifer Mann, Assistant Federal Defender; and Robert D. Bacon for Petitioner.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster and Robert Hill, Deputy Public Defenders, for Los Angeles County Public Defender as Amicus Curiae on behalf of Petitioner.

Linda F. Robertson for California Public Defenders Association as Amicus Curiae on behalf of Petitioner.

Kevin Bringuel, Joseph Trigilio and Cristina Bordé for Habeas Corpus Resource Center as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves and Michael P. Farrell, Assistant Attorneys General, Ward A. Campbell and Eric L. Christoffersen, Deputy Attorneys General, for Real Party in Interest.

Kent S. Scheidegger and L. Douglas Pipes for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Real Party in Interest.

W. Scott Thorpe; Doug MacMaster, Deputy District Attorney (Contra Costa) and Laura Tanney, Deputy District Attorney (Contra Costa) for California District Attorneys Association as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

CHIN, J.—Petitioner Lee Max Barnett is under a judgment of death. He filed in the superior court a motion for postconviction discovery under Penal Code section 1054.9 (section 1054.9). We granted review to decide important issues regarding that section. We reach the following conclusions:

■ Because section 1054.9 provides only for specific discovery and not the proverbial "fishing expedition" for anything that might exist, defendants seeking discovery beyond recovering what the prosecution had provided to the defense before trial must show a reasonable basis to believe that specific requested materials actually exist. But they do not additionally have to show that they are material within the meaning of *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*) and its progeny.

■ Section 1054.9 does not govern materials in the possession of out-of-state law enforcement agencies that merely provided the prosecution with information or assistance under the circumstances of this case.

### I. PROCEDURAL BACKGROUND

In 1988, in the Butte County Superior Court, petitioner was convicted of first degree murder with special circumstances, as well as other crimes, and was sentenced to death. We affirmed the judgment. (*People v. Barnett* (1998) 17 Cal.4th 1044 [74 Cal.Rptr.2d 121, 954 P.2d 384].) We have subsequently

denied two habeas corpus petitions that are irrelevant to the instant matter, one after issuing an order to show cause and an opinion. (*In re Barnett* (2003) 31 Cal.4th 466 [3 Cal.Rptr.3d 108, 73 P.3d 1106] [concerning pro se habeas corpus petitions filed by capital inmates already represented by counsel].)

We briefly summarized the facts underlying petitioner's conviction in *In re Barnett*: "It suffices to note that a jury convicted petitioner in 1988 of one count of assault with a firearm, several counts of kidnapping and robbery, and one count of first degree murder. Petitioner committed his crimes upon encountering the victims unexpectedly in 1986 at a remote campsite in a Butte County gold mining area. The evidence at trial included testimony from persons present at the encounter, including petitioner, and from others who had contact with petitioner the summer before the crimes occurred or immediately afterward." (*In re Barnett, supra*, 31 Cal.4th at p. 469.) At the penalty phase of the trial, the prosecution also presented evidence that petitioner had committed numerous other violent crimes and had various prior felony convictions. This criminal behavior and these convictions occurred between 1965 and 1988 in Canada, New York, Florida, Arizona, and Massachusetts, as well as California. (*People v. Barnett, supra*, 17 Cal.4th at pp. 1080–1081.)

In July 2004, petitioner filed a discovery motion in the Butte County Superior Court pursuant to section 1054.9. As the Court of Appeal summarized, "In his discovery motion, Barnett sought various materials, including materials now missing from the numbered discovery provided during trial, materials the prosecution allegedly failed to produce in response to a discovery order during trial, and various other materials." (Much of the following discussion is taken from the Court of Appeal opinion.) Informal communications between the parties resolved some of the discovery issues, but the parties disagreed regarding other requests, and they litigated the matter in superior court. At one point, petitioner filed a brief that identified 60 items or categories of items he was seeking to discover. After further informal discussions, petitioner's counsel informed the court that the prosecution had produced over 300 pages of discovery materials and 64 compact discs of audiotape recordings. But areas of disagreement remained. Ultimately, the superior court issued a ruling, granting some of the disputed discovery requests and denying others.

Petitioner filed the instant petition for writ of mandate in the Court of Appeal. He sought to compel the superior court to grant the discovery requests it had denied. At issue was the superior court's denial, in whole or in part, of 24 different discovery requests. The Court of Appeal issued an

alternative writ of mandate and ultimately addressed the 24 discovery requests in dispute in an exhaustive opinion. It granted the petition in part and denied it in part, and we granted review on specified issues. (*Barnett v. Superior Court* (Apr. 25, 2007, S150229).)

While the case was pending in this court, the Criminal Justice Legal Foundation filed an amicus curiae brief arguing that section 1054.9 was an invalid amendment of the statutory provisions of Proposition 115, enacted in 1990. In January 2008, we transferred the case back to the Court of Appeal to decide this question in the first instance. The Court of Appeal found that section 1054.9 is valid and otherwise essentially reiterated its first opinion.

In addition to upholding section 1054.9's validity, the Court of Appeal made three holdings now before us on review:

(1) "[A] law enforcement agency that provides a report relating to previous criminal conduct by a defendant charged with a capital offense can be deemed to have been 'involved in the investigation or prosecution of the case' against the defendant, such that materials in the possession of that agency are subject to discovery under section 1054.9." Accordingly, it ordered discovery of original notes from 22 out-of-state law enforcement officers who worked for six different out-of-state law enforcement agencies and who, according to petitioner, had been involved in investigating petitioner's prior crimes later used as aggravating evidence at the penalty phase of his trial.

(2) " '[I]n moving for discovery under section 1054.9, the defendant does not have to prove the actual existence (or a good faith belief in the actual existence) of discovery materials in the possession of the prosecution and/or the relevant law enforcement authorities as a prerequisite to obtaining an order for discovery under the statute.' " (Quoting the same panel's earlier opinion in *People v. Superior Court* (*Maury*) (2006) 145 Cal.App.4th 473, 485 [51 Cal.Rptr.3d 670]; see generally *id.* at pp. 479–485].)

(3) "[W]hen a defendant seeks discovery under section 1054.9 on the theory that he would have been entitled to the requested materials at time of trial under *Brady*[, *supra*, 373 U.S. 83], the defendant bears the burden of establishing the materiality of the evidence he seeks."

Both the People and petitioner sought review. In their respective petitions, the People challenged the first two of these holdings and petitioner the third. We granted both petitions and, on our own motion, ordered review of section

1054.9's validity. We have resolved the latter question in another case and found the statute valid. (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564 [107 Cal.Rptr.3d 265, 227 P.3d 858].) Accordingly, we will not now consider the statute's validity.

## II. Discussion

■ In 2002, the Legislature enacted section 1054.9, providing for post-conviction discovery in certain circumstances. Subdivisions (a) and (b) of that section, the portions relevant here, provide: "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c) [relating to physical evidence], order that the defendant be provided reasonable access to any of the materials described in subdivision (b).

"(b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

In *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444] (*Steele*), we resolved some issues regarding section 1054.9's meaning, but others remain. Here, we must decide (1) what burden, if any, defendants have to show that the requested discovery materials actually exist and are material; and (2) whether section 1054.9 applies to discovery materials that out-of-state law enforcement agencies possess.

### A. *Whether Defendants Have a Burden to Show Entitlement to Discovery Materials*

The legislative history behind section 1054.9 shows that the Legislature's main purpose was to enable defendants efficiently to reconstruct defense attorneys' trial files that might have become lost or destroyed after trial. (See *Steele, supra,* 32 Cal.4th at p. 694.) For example, the following discussion appears repeatedly in committee reports and other legislative history materials:

"According to the sponsor, 'The problem that occurs all too often is this: a defendant's files are lost or destroyed after trial and habeas counsel is unable to obtain the original documents because the State has no legal obligation to

provide them absent a court order. This leads to many delays and causes unnecessary public expenditures as prosecutors and habeas counsel litigate whether the defendant can demonstrate a need to re-access the materials and information originally available to him or her at trial.

" 'Currently, as expressed in *People v. Gonzalez* (1990) 51 Cal.3d 1179 [275 Cal.Rptr. 729, 800 P.2d 1159], habeas corpus counsel is required to establish all of the elements of a claim for habeas corpus relief before the court will entertain a motion to provide such original documents as police reports, ballistic tests and other materials and information. If habeas counsel cannot obtain the documents needed to meet this threshold showing because trial counsel's files have been lost or destroyed, the injustice is clear. The existing remedy, as discussed in *Gonzalez*, is woefully inadequate in cases where a defendant's file, through no fault of their own, no longer exists. The purpose of this bill is to provide a reasonable avenue for habeas counsel to obtain documents to which trial counsel was already legally entitled.' " (E.g., Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 3.)

■ The Legislature's purpose of enabling file reconstruction should not be difficult to implement. Defendants should first seek to obtain their trial files from trial counsel. But if a defendant can show a legitimate reason for believing trial counsel's current files are incomplete (for example, if, as here, not all numbered discovery is available), the defendant should be able to work with the prosecution to obtain copies of any missing discovery materials it had provided to the defense before trial (assuming it still possesses them). (See *Steele, supra*, 32 Cal.4th at p. 692 [suggesting informal efforts to resolve discovery matters].) If necessary, the trial court can order the prosecution to provide any materials it still possesses that it had provided at time of trial. As the Court of Appeal noted in a different case, "it is possible that a defendant seeking discovery under section 1054.9 will simply have no idea whether the materials he obtained from trial counsel—assuming he obtained any at all—amount to all of the materials the prosecution turned over during trial." (*People v. Superior Court (Maury), supra*, 145 Cal.App.4th at p. 482.) Accordingly, we agree with *Maury* (and the Court of Appeal here, which followed *Maury* in this regard) that, when trying to reconstruct files, defendants need not identify all missing discovery materials that the prosecution had previously provided to the defense or show that they are still in the prosecution's possession.

■ A problem exists, however, because, as we explained in *Steele*, although "the bill's main focus was to permit reconstruction of lost files . . . ," the statutory language provides for more than that. (*Steele, supra*, 32 Cal.4th at p. 694.) The statute permits discovery of materials "to which trial counsel

was legally entitled," which "is broader than mere file reconstruction." (*Ibid.*) Here, petitioner seeks much more than mere file reconstruction. His discovery motion contained a wide range of requests, some reasonably specific, others open ended. At one point in this litigation, for example, he identified 60 different items or categories of items that he sought. Even after the trial court granted many of his requests, petitioner challenged in this writ proceeding the denial or partial denial of 24 others. He sought "any information in the government's hands regarding any of its witnesses' motives to lie or biases for the State or against Mr. Barnett." Thus, in addition to some specific requests, petitioner was on a proverbial fishing expedition for anything that might exist.

In *Steele*, we stated that "section 1054.9 does provide only limited discovery. It does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*Steele, supra*, 32 Cal.4th at p. 695.) In discussing what materials beyond file reconstruction defendants were entitled to obtain, we repeatedly used the word "specific." For example, we said the obtainable discovery "includes specific materials that the defendant can show the prosecution should have provided (but did not provide) at the time of trial because they came within the scope of a discovery order the trial court actually issued at time of trial or a statutory duty to provide discovery." (*Ibid.*) We also noted Evidence Code section 664's presumption that an official duty has been regularly performed and said that, before being entitled to discovery under section 1054.9, the defendant must overcome this "presumption as to specific evidence." (*Steele, supra*, at p. 694.) As we have explained, the Legislature was primarily concerned with preventing the problems that occur when the trial attorney's files no longer exist through no fault of the defendant. This concern, together with the Legislature's evident intent to make section 1054.9 an efficient method of discovery, causes us to conclude that section 1054.9 requires defendants who seek discovery beyond file reconstruction to show a reasonable basis to believe that other specific materials actually exist. Otherwise, a discovery request can always become, as this one has, a free-floating request for anything the prosecution team may possess.

In concluding that defendants need not make such a showing, the Court of Appeal cited its opinion in an earlier case, which had said that such a requirement "erects a standard that is virtually impossible, if not absolutely impossible, for a defendant to meet." (*People v. Superior Court (Maury)*, *supra*, 145 Cal.App.4th at p. 480; see also *Curl v. Superior Court* (2006) 140 Cal.App.4th 310, 324 [44 Cal.Rptr.3d 320].) Whether this is so depends on the purpose behind section 1054.9. If the statute's purpose is to allow defendants to search for any material that might exist, then of course this requirement would be impossible to meet. But if the statute's purpose is to allow defendants to receive materials they have reason to believe they are

missing, then the standard is logical, not impossible. The legislative history shows the statute's purpose is the latter.

Requiring defendants to show they have reason to believe specific materials actually exist does not place an onerous burden on them. Defendants have access to the trial record and to the discovery materials the prosecution provided to the defense before trial. Defendants may obtain those materials either from trial counsel or through file reconstruction. As the Attorney General notes, a person could use these resources "to make the necessary showing. For example, if a witness testifies about a particular report that the petitioner does not possess, the petitioner would have sufficient evidence to justify a request for that report under section 1054.9. It would also be appropriate for a petitioner to seek access to a report he or she does not possess that is cross-referenced in a police report possessed by the petitioner. Similarly, if evidence in the record indicates that a particular witness was interviewed three times and the petitioner has reports documenting only two interviews, that petitioner could make the necessary showing, based on the record, that a third report likely exists."

Petitioner challenges our reliance in *Steele* on Evidence Code section 664's presumption that official duties have been regularly performed. He argues it is merely an evidentiary presumption for trial purposes. But the United States Supreme Court has cited a similar presumption as a reason to deny discovery regarding speculative misconduct claims. (*Bracy v. Gramley* (1997) 520 U.S. 899, 909, [138 L.Ed.2d 97, 117 S.Ct. 1793] ["Ordinarily, we presume that public officials have ' "properly discharged their official duties." ' [Citation.] Were it possible to indulge this presumption here, we might well agree . . . that petitioner's submission and his compensatory-bias theory are too speculative to warrant discovery. But . . . the presumption has been soundly rebutted . . . ."].) Similarly, in a case involving the prosecution's duty to provide exculpatory materials, the high court stated that "[m]ere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." (*Strickler v. Greene* (1999) 527 U.S. 263, 286 [144 L.Ed.2d 286, 119 S.Ct. 1936].) We believe the Legislature intended the courts to interpret section 1054.9 in a similar manner.

■ This brings us to a related question. The Court of Appeal held that in order to receive potentially exculpatory materials, petitioner "bears the burden of establishing the materiality of the evidence he seeks." This holding was based on the circumstance that, to establish a violation of the prosecution's duty to disclose exculpatory evidence, a defendant challenging a conviction must establish not only that the prosecution withheld the evidence but also that the evidence was *material*, meaning that it is reasonably

probable the result would have been different had the evidence been disclosed. (See *Steele, supra,* 32 Cal.4th at pp. 697–698 [discussing *Brady, supra,* 373 U.S. 83, and its progeny].) Petitioner challenges, and the Attorney General defends, this holding. We agree with petitioner that he need not establish materiality before he even sees the evidence. The showing that defendants must make to establish a violation of the prosecution's duty to disclose exculpatory evidence differs from the showing necessary merely to receive the evidence. For example, Penal Code section 1054.1, subdivision (e), requires the prosecution to disclose "[a]ny exculpatory evidence," not just material exculpatory evidence. To prevail on a claim the prosecution violated this duty, defendants challenging a conviction would have to show materiality, but they do not have to make that showing just to be entitled to receive the evidence before trial. The trial in this case predated the enactment of Penal Code section 1054.1, so its provisions did not govern the trial, but the statute illustrates the difference between being entitled to relief for a *Brady* violation and being entitled merely to receive the evidence. If petitioner can show he has a reasonable basis for believing a specific item of exculpatory evidence exists, he is entitled to receive that evidence without additionally having to show its materiality.

■ In summary, we conclude that, to be entitled to receive discovery beyond merely recovering items that the prosecutor had provided to defense counsel before trial, defendants must show they have a reasonable basis to believe that the specific materials they seek actually exist. To obviate one concern that petitioner has expressed, we note that a reasonable basis to believe that the prosecution had possessed the materials in the past would also provide a reasonable basis to believe the prosecution still possesses the materials. Petitioner need not make some additional showing that the prosecution still possesses the materials, a showing that *would* be impossible to make. (However, as we explained in *Steele,* § 1054.9 "imposes no preservation duties that do not otherwise exist." (*Steele, supra,* 32 Cal.4th at p. 695.)) We disapprove *People v. Superior Court (Maury), supra,* 145 Cal.App.4th 473, and *Curl v. Superior Court, supra,* 140 Cal.App.4th 310, to the extent they are inconsistent with this opinion.

 B. *Whether Penal Code Section 1054.9 Extends to Materials in the Possession of Out-of-state Law Enforcement Agencies*

In *Steele, supra,* 32 Cal.4th at page 696, we considered "the question of exactly who must possess the materials for them to come within [section 1054.9's] scope." We concluded that the statute governs discovery "materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case . . . ." (*Id.* at p. 697.) The question before us is whether section 1054.9 governs materials in the

possession of out-of-state law enforcement agencies that merely provided the prosecution with information or assistance under the circumstances of this case.

In *Steele*, we explained that "[s]ection 1054.9, subdivision (b), refers to 'materials in the possession of the prosecution and law enforcement authorities . . . .' Thus, the materials include not only those the prosecution itself possesses but those that law enforcement authorities possess. The discovery obligation, however, does not extend to all law enforcement authorities everywhere in the world but, we believe, only to law enforcement authorities who were involved in the investigation or prosecution of the case." (*Steele,' supra,* 32 Cal.4th at p. 696.) For guidance, we referred to the general pretrial discovery provisions, which "limit trial discovery to materials the prosecutor possesses or knows 'to be in the possession of the *investigating* agencies . . . .' (Pen. Code, § 1054.1, italics added.)" (*Steele, supra,* at p. 696.) Because we did not read section 1054.9 as creating a broader postconviction discovery right than exists pretrial, we concluded that the "law enforcement authorities" referred to in section 1054.9 are similar to the "investigating agencies" referred to in Penal Code section 1054.1. (*Steele, supra,* at p. 696.) We also found instructive the provisions of Penal Code section 1054.5, subdivision (a), which seemed to define further what investigating agencies the pretrial discovery provisions cover. That subdivision provides that the general discovery "provisions are the only means for the defendant to compel discovery 'from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties.' " (*Steele, supra,* at p. 696.) Reading all of these provisions together, we concluded that the pretrial discovery obligations and section 1054.9's discovery rights "do not extend to materials possessed by law enforcement agencies that were not involved in investigating or preparing the case against the defendant." (*Steele, supra,* at p. 696.)

*Steele* further explained that this "conclusion is consistent with the scope of the prosecution's constitutional duty to disclose exculpatory information. 'The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge "any favorable evidence known to the others *acting on the government's behalf* . . . ." ' (*In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715], italics added, quoting *Kyles v. Whitley* (1995) 514 U.S. 419, 437 [131 L.Ed. 2d 490, 115 S.Ct. 1555].) 'As a concomitant of this duty, any favorable evidence known to the others acting on the government's behalf is imputed to the prosecution. "The individual prosecutor is presumed to have knowledge of all information gathered *in connection with the government's investigation.*" ' (*In re Brown, supra,* at p. 879, italics added,

quoting *U.S. v. Payne* (2d Cir. 1995) 63 F.3d 1200, 1208.) Thus, the prosecution is responsible not only for evidence in its own files but also for information possessed by others acting on the government's behalf that [was] gathered in connection with the investigation. But the prosecution cannot reasonably be held responsible for evidence in the possession of *all* governmental agencies, including those not involved in the investigation or prosecution of the case. 'Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material.' (*People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1315 [96 Cal.Rptr.2d 264].)" (*Steele, supra*, 32 Cal.4th at pp. 696–697.)

We must decide how these principles apply to out-of-state law enforcement agencies. Petitioner argues that the out-of-state law enforcement agencies involved in this case are part of the prosecution team under section 1054.9. In this regard, he filed in this court a "motion to take documentary evidence or for other appropriate relief." Attached to the motion are copies of correspondence in 1987 between the Butte County District Attorney and a New York law enforcement agency. Those documents, which are not otherwise part of the record in this case, show that the New York authorities supplied the district attorney with information concerning crimes petitioner had committed in New York and helped put the California authorities in touch with at least one of the victims, who testified at petitioner's capital trial in California. The Attorney General stated he does not object to this court's considering these documents. Accordingly, we issued an order granting the motion and have considered the documents attached to petitioner's motion to be part of the record in this case. These and other records show that the out-of-state agencies provided assistance and perhaps conducted a few interviews of potential witnesses.

Although the out-of state law enforcement agencies acted on behalf of the prosecution in a limited sense, we believe that they are not part of the " 'prosecution team'. " as discussed in *Steele, supra*, 32 Cal.4th at page 697. Whether discovery under section 1054.9 extends so far is a matter of statutory interpretation. The legislative history, discussed in part II.A., *ante*, is inconclusive, but it shows that the Legislature expected and intended that section 1054.9 would provide a useful, reasonably efficient, and workable, method for a defendant to obtain readily available discovery materials. We do not believe the Legislature intended to compel discovery from the out-of-state agencies of this case that the prosecution does not itself possess.

In *Steele*, we analogized section 1054.9's discovery provisions to the prosecution's duty to provide material exculpatory evidence, i.e., what is sometimes called " '*Brady* material.' " (*Steele, supra*, 32 Cal.4th at pp. 696–697; see *Brady, supra*, 373 U.S. 83.) As *Steele* explained, the pretrial obligation to provide *Brady* material extends not only to materials the prosecutor personally possesses but, to some extent, to materials others possess as well. (See also *Strickler v. Greene, supra*, 527 U.S. at p. 275, fn. 12 [duty extends to materials possessed by police department of another county in the same state that investigated the charged crime]; *Giglio v. United States* (1972) 405 U.S. 150, 154 [31 L.Ed.2d 104, 92 S.Ct. 763] [duty extends to material possessed by another prosecutor in the same office].) But the duty does not extend to all law enforcement agencies that might possess relevant material. (*Steele, supra*, 32 Cal.4th at p. 696.)

■ A federal court that had to decide whether an agency was part of the prosecution team for *Brady* purposes considered three relevant questions: " '(1) whether the party with knowledge of the information is acting on the government's "behalf" or is under its "control"; (2) the extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and (3) whether the entity charged with constructive possession has "ready access" to the evidence.' " (*U.S. v. Reyeros* (3d Cir. 2008) 537 F.3d 270, 282, quoting *U.S. v. Risha* (3d Cir. 2006) 445 F.3d 298, 304.) Here, the out-of-state agencies acted on the prosecution's behalf in the sense that they provided certain limited assistance on request. But none of them were or are under the control of any California authorities—an important factor. (See *U.S. v. Aichele* (9th Cir. 1991) 941 F.2d 761, 764 ["The prosecution is under no obligation to turn over materials not under its control."].) They were not part of a team participating in a joint investigation or sharing resources, but merely provided specific assistance. Regarding whether the California prosecution had ready access to the evidence, presumably they actually received any information out-of-state agencies gathered on their behalf. ■ An out-of-state agency that gathered information but did not provide it to the California prosecutors can surely not be considered part of the California prosecution team. If California prosecutors did receive the information, petitioner can seek discovery directly from the prosecution. If California prosecutors did not receive the information, no reason appears to believe they had or have ready access to it.

Two federal decisions are closely on point. In *Moon v. Head* (11th Cir. 2002) 285 F.3d 1301, a Georgia death penalty case, the prosecution presented evidence of a murder the defendant had committed in Tennessee as aggravating evidence at the sentencing phase of his trial. As part of its evidence, the prosecutor called as a witness Davenport, an investigator for the Tennessee Bureau of Investigation (TBI), who had previously turned over his investigative file to the Georgia prosecutor. (*Id.* at pp. 1304–1305, 1308.) The

defendant later claimed the prosecutor violated *Brady, supra,* 373 U.S. 83, by withholding allegedly exculpatory information that the TBI possessed. The court concluded that the Georgia prosecutor did not possess this information for *Brady* purposes. It "refuse[d] to impute to the Georgia prosecutor the evidence regarding [the Tennessee murder] possessed by Davenport and the TBI. . . . [T]he Georgia and Tennessee agencies shared no resources or labor; they did not work together to investigate the [Tennessee or the charged Georgia] murders. Nor is there evidence that anyone at the TBI was acting as an agent of the Georgia prosecutor. Davenport was not under the direction or supervision of the Georgia officials, and, had he chosen to do so, could have refused to share any information with the Georgia prosecutor. At most, the Georgia prosecutor utilized Davenport as a witness to provide background information to the Georgia courts. This is insufficient to establish Davenport as part of the Georgia 'prosecution team.' " (*Moon, supra,* at p. 1310, fn. omitted.)

In *U.S. v. Kern* (8th Cir. 1993) 12 F.3d 122, a noncapital case that the federal government tried, the prosecutor presented evidence that the defendant had committed another crime, which Nebraska law enforcement agencies had investigated. The court held that the federal prosecutor did not possess allegedly exculpatory materials in the possession of state authorities for *Brady* purposes. "We do not accept the defendants' proposal that we impute the knowledge of the State of Nebraska to a federal prosecutor." (*Kern, supra,* at p. 126.)

In this case, the Court of Appeal found that *Moon v. Head, supra,* 285 F.3d 1301 (and, presumably, *U.S. v. Kern, supra,* 12 F.3d 122) did not apply because "California courts do not interpret the constitutional duty to disclose exculpatory information as limited to information in the actual possession of the 'prosecution team.' " Instead, it concluded that "even if the out-of-state law enforcement agencies were not part of the 'prosecution team,' the People used those agencies to assist in their prosecution of the capital case against Barnett. Accordingly, the People had constructive possession of information possessed by those agencies, and the People's constitutional duty to disclose exculpatory information extended to information in the possession of those agencies."

 We disagree. We have ourselves used the term "prosecution team" to describe the extent of the prosecutor's *Brady* obligations. (*Steele, supra,* 32 Cal.4th at p. 697; *In re Brown, supra,* 17 Cal.4th at p. 879.) Moreover, we have found "no reason to assume the [pretrial discovery language of Penal Code section 1054.1] assigns the prosecutor a broader duty to discover and disclose evidence in the hands of other agencies than do *Brady* and its progeny." (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1133–1134 [63

Cal.Rptr.3d 297, 163 P.3d 4].) In any event, we need not decide definitively whether the out-of-state agencies would have been considered part of the prosecution team under *pretrial* discovery rules. Section 1054.9 is a posttrial discovery provision. For the reasons discussed, we do not believe the Legislature intended the posttrial discovery right to extend so far as to permit a court to order discovery from 22 law enforcement officers working for six different out-of-state agencies, one outside the country, regarding crimes committed between 1965 and 1988. (See also *District Attorney's Office for Third Judicial Dist. v. Osborne* (2009) 557 U.S. ___, ___ [174 L.Ed.2d 38, 129 S.Ct. 2308, 2320] [distinguishing between the pretrial and the posttrial obligation to provide exculpatory evidence].)

Accordingly, we conclude the prosecution is not required to provide discovery of materials from the out-of-state law enforcement agencies of this case that the prosecution does not itself possess.

### III. Conclusion

We believe the instant discovery dispute is best resolved by remanding the matter back to the trial court, where the parties can try to settle it informally consistent with the views expressed in this opinion. If informal efforts fail, the trial court can issue a new order consistent with this opinion. If necessary, either party may then challenge the new order by a writ proceeding in the Court of Appeal.

We reverse the judgment of the Court of Appeal and remand the matter to that court with directions to remand the matter to the trial court for further proceedings consistent with this opinion.

George, C. J., Baxter, J., and Corrigan, J., concurred.

**MORENO, J.,** Concurring and Dissenting.—I agree with part II.A. of the majority opinion that defendants seeking postconviction discovery under Penal Code section 1054.9 must show a reasonable basis to believe that those items actually exist, but do not have to show further that those items are material within the meaning of *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. But I disagree with part II.B. of the majority opinion that section 1054.9 does not permit discovery of materials in the possession of out-of-state law enforcement agencies under the circumstances of this case.

I agree with part II. of Justice Werdegar's dissent, *post*, that, at the least, petitioner is entitled to discover information in the possession of the New York State Police that relates to the information that agency gathered for the prosecution in this case. I dissent from the majority's contrary holding.

**WERDEGAR, J.,** Dissenting.—The United States Constitution requires certain minimum procedural protections in criminal cases generally and capital cases in particular. The states, however, are "absolutely free" to provide defendants with greater protection. (*Arizona v. Evans* (1995) 514 U.S. 1, 8 [131 L.Ed.2d 34, 115 S.Ct. 1185].) The prerogative to provide such protections lies in the first instance with our Legislature. In 2002, dissatisfied with this court's refusal to permit postconviction discovery motions (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1256–1257 [275 Cal.Rptr. 729, 800 P.2d 1159]), the Legislature directed courts to provide convicted defendants with any "materials . . . to which [they] would have been entitled at [the] time of trial" (Pen. Code,[1] § 1054.9, subd. (b), added by Stats. 2002, ch. 1105, § 1; see generally *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444] (*Steele*)). The Legislature having thus spoken, it is not our place to burden the new statutory right with judicially created conditions that substantially diminish its value. Because this is the effect of today's opinion, I dissent and invite the Legislature to reassert its prerogative in terms that cannot so easily be ignored.[2]

## I. THRESHOLD BURDEN

In *Steele, supra,* 32 Cal.4th 682, we rejected the Attorney General's contention that section 1054.9 was nothing more than a file reconstruction statute. The statute does not, we explained, "limit [postconviction] discovery to materials the defendant *actually possessed* to the exclusion of materials the defense *should have possessed.* If the Legislature had intended to limit the discovery to file reconstruction it could easily have said so." (*Steele, supra,* 32 Cal.4th at p. 693.) Today, however, the majority eviscerates our prior holding by imposing a daunting, often insurmountable threshold burden on defendants who seek discovery beyond mere file reconstruction. Specifically, the majority holds that defendants who seek materials the prosecutor should have, but did not, disclose must first show that specific undisclosed materials actually exist. (Maj. opn., *ante,* at p. 894; see also *id.,* at p. 899.) If the defendant cannot successfully divine the contents of the prosecutor's files, the majority continues, courts should simply presume the People have satisfied their obligations and deny the motion without further inquiry. (See maj. opn., *ante,* at p. 899, citing Evid. Code, § 664 [It is presumed that "official duty has been regularly performed."].) This interpretation of the postconviction discovery statute (§ 1054.9), lacking any basis in the statute's language, is wholly illegitimate.

---

[1] All further statutory citations are to the Penal Code, except as noted.

[2] I agree with the majority on one point only: A defendant seeking information through postjudgment discovery under section 1054.9 need not prove the information is material. (See maj. opn., *ante,* at pp. 894, 901.)

The majority's interpretation of the statute is also intolerably unfair to the defense. As another court has aptly observed, "[i]t is axiomatic that one cannot prove what was not turned over if one does not know what was not turned over. Likewise it is simply nonsensical to apply a presumption that a duty was regularly performed for purposes of barring a request for materials that would show a duty was not regularly performed." (*Curl v. Superior Court* (2006) 140 Cal.App.4th 310, 324 [44 Cal.Rptr.3d 320].) In any event, the presumption does not properly affect the People's discovery obligations. In that context, "the 'special role played by the American prosecutor in the search for truth in criminal trials' " compels an exception to the ordinary " 'presum[ption] that public officials have properly discharged their official duties.' " (*Banks v. Dretke* (2004) 540 U.S. 668, 696 [157 L.Ed.2d 1166, 124 S.Ct. 1256].) "A rule thus declaring 'prosecution may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." (*Ibid.*)[3]

To hold that a defendant must prove specific undisclosed materials exist before requesting their production will inevitably have the pernicious effect of shielding both negligent and intentional failures to produce relevant evidence. This is not speculation. In the case before us, the prosecutor's inadvertent failure to produce police reports that fell within the scope of a specific pretrial discovery order came to light only when defendant requested such materials in posttrial discovery. Under today's holding, defendant's request would have been denied at the outset because he had no way to prove the reports existed, and they would never have come to light.

Seeking to play down the newly created threshold burden, the majority suggests the record will occasionally give the defense a basis for proving that specific undisclosed materials do exist. For example, if a witness testifies about a particular report the defendant does not possess, or if a disclosed report cross-references an additional, undisclosed report, the defendant would presumably have sufficient evidence to justify a discovery request under section 1054.9. (See maj. opn., *ante*, at p. 901.) I do not doubt that, in a few rare cases, random events may reveal that the prosecution has in fact failed to comply with its disclosure obligations. But the Legislature cannot reasonably be thought to have intended to condition an important statutory right on fortuities.

In any event, nothing in the language of the postconviction discovery statute supports the majority's decision to impose a threshold burden of proof on the defense. Section 1054.9 provides simply that a defendant is entitled to

---

[3] In *Bracy v. Gramley* (1997) 520 U.S. 899, 909 [138 L.Ed.2d 97, 117 S.Ct. 1793], an older case on which the majority relies (maj. opn., *ante*, at p. 900), the high court *declined* to rely on a presumption that officials had performed their duty as a reason to deny discovery.

"materials in the possession of the prosecution and law enforcement authorities to which the same defendant *would have been entitled at [the] time of trial.*" (*Id.*, subd. (b), italics added.) The majority attempts to justify its newly created threshold burden as necessary to prevent speculative fishing expeditions by the defense. I agree that some of this defendant's discovery requests probably do fit that description. But as fishing expeditions are not proper even before trial, the postconviction discovery statute does not authorize them, either. (E.g., *Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 393 [51 Cal.Rptr.3d 637].) To reach this conclusion, we need not engage in the illegitimate practice of "add[ing] requirements to those already supplied by the Legislature." (*In re Jennings* (2004) 34 Cal.4th 254, 265 [17 Cal.Rptr.3d 645, 95 P.3d 906].) I also agree that statutes should be interpreted to be efficient and workable (maj. opn., *ante*, at p. 903), and that to permit fishing expeditions is neither. But there is nothing inefficient or unworkable in requiring the prosecutor, in response to a proper request for materials to which the defense was entitled before trial (see §§ 1054.1, subds. (a)–(f), 1054.9, subd. (b)), to verify that the prosecution has already done what it was required to do and, if such is the case, to state unambiguously that no undisclosed materials exist. To rely instead on a generic evidentiary presumption that official duty has been performed (Evid. Code, § 664; see maj. opn., *ante*, at p. 899) renders section 1054.9 virtually unenforceable *except* as a file reconstruction statute, contrary to Legislative intent. (See *Steele, supra,* 32 Cal.4th 682, 693.)

In its zeal to protect the People from the supposed burden of complying with their postconviction discovery obligations, the majority goes even farther than the People ask the court to go. At oral argument, the People contended that defendant's request for interview notes prepared by the New York State Police should be denied because defendant is unable to show precisely what the New York agency did at the Butte County prosecutor's request, even though correspondence between the two agencies shows New York enthusiastically provided witness-related assistance that Butte County described as "very helpful." The People thus correctly anticipated, and proposed to apply, the majority's holding imposing a threshold burden of proof on the defense. But later, in response to questioning from the bench, the People conceded "it might be appropriate" for the trial court to ask the prosecutor precisely what assistance New York provided because the prosecutor is "in a position to know," and that to require the prosecutor to answer the question would not impose "a huge burden." The majority's failure to accept the People's concession makes it impossible to accept today's holding as necessary to make the postconviction discovery statute workable and efficient.

## II. OUT-OF-STATE LAW ENFORCEMENT AGENCIES

The majority also concludes defendant is not entitled to any witness interview notes prepared by out-of-state law enforcement agencies at the specific request of the Butte County prosecutor's office. (Maj. opn., *ante*, at pp. 895, 903, 905.) Although the relevant facts have not yet been fully developed, defendant has shown that various out-of-state law enforcement agencies[4] undertook, at the Butte County prosecutor's specific request, to locate and interview witnesses who could offer testimony about defendant's prior offenses in connection with the penalty phase trial.

The New York State Police, in particular, enthusiastically acted as the prosecutor's agents in the penalty phase investigation. In January 1987, the Butte County District Attorney's Office, in a letter to the New York State Police (NYSP), specifically requested New York's "assistance in locating and re-interviewing the key witnesses in two [New York] investigations, with a view towards their ultimate testimony in our court in the penalty phase trial." A commanding officer of the NYSP's Bureau of Criminal Investigation (BCI) responded by directing a troop commander to "assign a member of the BCI to conduct the appropriate investigation as requested" and to provide further, continuing assistance upon "any additional request of the [Butte County] District Attorney's Office telephonically conveyed . . . ." The commanding officer emphasized to his subordinates that "[d]ue to the severity of the charges, the possible ultimate judgment and certain time considerations in the California Judicial System, the assigned member is to expedite this investigation as a priority matter. *The result of this investigation and locating of the pertinent witnesses will be instrumental and extremely important to the prosecution's position at the penalty trial*." (Italics added.) The New York agencies did as California asked. In a followup letter requesting further assistance with respect to a particular penalty phase witness, the Butte County prosecutor's office noted that its efforts had "been much assisted by [a named] Investigator . . . . of your troop in East Greenbush" and that the New York State Police "have been very helpful in our efforts and we are very appreciative."[5]

In view of these facts, candor would seem to require us to acknowledge that the New York State Police did act on behalf of the Butte County prosecutor in gathering information in connection with the penalty phase investigation. (See *Steele, supra*, 32 Cal.4th 682, 697.) Accordingly, any

---

[4] Specifically, the New York State Police, the Miami-Dade Police Department (Florida), the Miami-Dade Office of the State Attorney (Florida), and the Calgary Police Service (Alberta, Canada).

[5] As the majority notes (maj. opn., *ante*, at p. 903), we granted defendant's motion to consider this documentary evidence.

related interview notes generated by the New York agency would fall squarely within the rule that "the prosecution is responsible not only for evidence in its own files but also for information possessed by others acting on the government's behalf that were gathered in connection with the investigation." (*Ibid.*)

Seeking to avoid this conclusion, the majority observes, among other things, that out-of-state law enforcement agencies are not under the Butte County prosecutor's control. (Maj. opn., *ante*, at p. 904.) But defendant has shown that New York, at least,[6] willingly provided assistance at the prosecutor's request in connection with the penalty phase investigation. Presumably the out-of-state agencies cooperated out of comity, professional courtesy and a shared dedication to law enforcement, rather than out of any technical legal compulsion. But if the Butte County prosecutor can have, simply for the asking, the enthusiastic cooperation of out-of-state agencies in generating information to assist in presenting the case *for the death penalty*, the prosecutor should not be heard to claim that he lacks sufficient control to obtain the same information to assist petitioner in presenting the case *against the death penalty*. Such information is reasonably accessible to the prosecutor, and we have considered information to be in the prosecution's possession for purposes of pretrial discovery if such information is " '*reasonably accessible*' to the prosecution," or " '*readily available*' to the prosecution and not accessible to the defense." (*In re Littlefield* (1993) 5 Cal.4th 122, 135 [19 Cal.Rptr.2d 248, 851 P.2d 42], italics added.) Whatever information the defense is entitled to have before trial, it is entitled to have after trial, as well.[7] (§ 1054.9, subd. (b).)

In this case, the record leaves no doubt that information from New York is reasonably available to the Butte County prosecutor. The People conceded as much at oral argument, and agreed that Butte County's lack of control over an out-of-state agency is not determinative when "[t]he prosecutor actively engages another agency and asks them to 'please, go out and develop this

---

[6] The majority fails entirely to mention the nature and scope of the assistance provided by law enforcement officers in Miami-Dade County and Calgary. Yet defendant asserted in his motion for postconviction discovery that officers in both locations interviewed witnesses at the Butte County prosecutor's request, and the People do not challenge the accuracy of defendant's assertions.

[7] The majority states that "we need not decide definitively whether the out-of-state agencies would have been considered part of the prosecution team under *pretrial* discovery rules" because "[s]ection 1054.9 is a posttrial discovery provision." (Maj. opn., *ante*, at p. 906.) I find this statement mysterious and, thus, potentially mischievous, because the statutory right to postconviction discovery expressly extends to materials "to which the . . . defendant would have been entitled at [the] time of trial." (§ 1054.9, subd. (b).)

evidence that I need to put on my penalty phase.' " Here, too, in the service of its holding, the majority refuses to accept what is obvious to the People. For this reason as well, I dissent.

Rushing, J.,[*] concurred.

Petitioner's petition for a rehearing was denied October 13, 2010. Kennard, J., did not participate therein. Werdegar, J., Moreno, J., and Rushing, J.,[*] were of the opinion that the petition should be granted.

[*]Presiding Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.