Filed 9/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRETT STUART LEWIS,<br><br>      Defendant and Appellant. | A143106<br><br>(Contra Costa County<br>Super. Ct. No. 51221183) |

Defendant Brett Stuart Lewis challenges two trial court orders in this appeal from his convictions for vehicle theft and reckless vehicular evasion of a peace officer. The first order denied a *Brady*[1] motion in which he sought to compel the discovery of information about the arresting officer, Matthew Switzer, after the prosecution informed the defense on the first day of trial that Switzer would not be called as a witness. The second order denied a motion for a new trial filed by Lewis after he learned that Switzer had been charged with, and pleaded no contest to, charges of burglary, elder abuse, and obtaining a controlled substance. In entering these orders, the trial court found that the evidence about Switzer was immaterial and that the jury was not reasonably likely to have acquitted Lewis if it had been aware of this evidence. Although we have serious concerns whether the prosecution satisfied its discovery obligations, we agree with the trial court that there was no *Brady* violation, and we therefore affirm.

---

[1] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). Under *Brady*, the prosecution may not suppress evidence material to the defendant's guilt or punishment. (*Id.* at p. 87.)

## BACKGROUND

The Contra Costa District Attorney charged Lewis with: (1) the unlawful taking or driving of a vehicle (vehicle theft); (2) evading a peace officer while driving with a willful or wanton disregard for the safety of others (evasion); (3) resisting a peace officer; and (4) possession of burglar's tools.[2] The trial court dismissed the last two counts on the prosecutor's motion, but the jury convicted Lewis of the first two counts. He was sentenced to six years in prison—one year for vehicle theft, three years for evasion, and two years for the sentencing enhancements.

At the preliminary hearing, Switzer testified he was on patrol with a police dog in a marked K-9 unit in the late evening of November 11, 2012, the day of Lewis's arrest. He ran a Department of Motor Vehicles registration check on a four-door Saturn sedan and discovered the vehicle's plates had been recently lost or stolen. According to Switzer, he waited for backup to arrive and then initiated a traffic stop by turning on his overhead emergency lights. Lewis was the driver of the Saturn, and after Switzer's emergency lights came on, he accelerated to well over the posted speed limit and ran several stop signs. Switzer and the other officers pursued him.

Switzer testified that at least twice during the pursuit Lewis opened his door and stuck out his foot as if he were going to run. Switzer claimed that on these occasions he broadcast over his public address system something like, "[I]f you run, I'm going to send my dog—I'm going to send my dog, and you're going to get bit." Each time, Lewis responded by closing his door and accelerating. At one point, Lewis crashed the Saturn into a curb and both of its passenger-side tires went flat. Eventually, he came to an abrupt stop in the middle of an intersection and fled on foot. Switzer again warned Lewis

[2] The vehicle-theft charge was filed under Vehicle Code section 10851, subdivision (a); the evasion charge was filed under Vehicle Code section 2800.2, subdivision (a); the resisting charge was filed under Penal Code section 148, subdivision (a)(1); and the possession charge was filed under Penal Code section 466. In addition, sentencing enhancements were charged under Penal Code section 667.5, subdivision (b). All further statutory references are to the Penal Code unless otherwise specified.

to stop or he would "get bit." When Lewis failed to comply, Switzer released the dog, which caught Lewis and bit him on his right arm, and Lewis was arrested. The license plates on the Saturn had been issued for a different vehicle and taken without permission.

On the first day of trial, March 17, 2014, the prosecutor gave the defense the prosecution's witness list. Switzer's name was not on it. This was the first time the defense learned that Switzer would not be called as a prosecution witness.

The jury heard testimony from other officers who had pursued Lewis immediately before his arrest, including Officer David Greenfield. Greenfield testified that he joined the pursuit after learning that Switzer was following a car displaying lost or stolen plates. Greenfield and another officer pulled behind Switzer, and they attempted to initiate a traffic stop by turning on their overhead lights. Lewis, who had been driving at 25 to 30 miles per hour, accelerated to speeds well above the 45 miles per hour speed limit. Lewis ran several stop signs, hit a curb, blew out the passenger-side tires, and on two or three occasions, slowed the car and opened the driver-side door. Greenfield heard Switzer say something over his public address system when Lewis slowed, but he could not make out what was said. Eventually, Lewis stopped in the middle of an intersection and fled on foot. Greenfield stayed behind to apprehend a woman who remained in the Saturn.

The Saturn belonged to Gerald Devenuta, who also testified at the trial. He testified that the Saturn was stolen from the parking lot of a mall on the evening of October 30, 2012. He stated that when he recovered the car from the impound yard several weeks later, he discovered that its body was damaged, the tires were flat, a new stereo system had been installed, and there were cigarette burns all over the interior. He also noticed someone had tampered with the car's ignition and interior wiring.

Lewis testified in his own defense. He maintained he did not know the Saturn was stolen. He claimed that a friend, Steve Anderson, had brought him the car to repair because its check-engine light was illuminated. Lewis did not have Anderson's permission to drive the Saturn, but he drove it anyway because he lacked a car of his own

and wanted to spend time with another friend, Kelly Jones.[3] Lewis testified that as he was driving Jones to her daughter's house, a police car made a U-turn and pulled up behind them. According to Lewis, the police officer announced, presumably over his public address system, "Pull over; I'm going to release the dog and he is going to bite you." The police car's overhead lights and sirens had not been activated. Lewis claimed he sped up because he was afraid of being bitten. He also maintained that during the ensuing chase, the police officer repeated his warning about releasing the dog. Although Lewis agreed with Greenfield's testimony about the course of the chase, he denied ever slowing down and opening the driver-side door.

On the third day of trial, March 19, 2014, Lewis filed a *Brady* motion seeking from the prosecution "impeachment information regarding . . . Switzer" and "[a]ny evidence that would tend to exonerate . . . Lewis, minimize his probable sentence, or that constitutes information that the defense might use to impeach or contradict prosecution witnesses." Lewis argued that the evidence would be relevant to his claim he had fled because he was threatened by Switzer and would go to the reasonableness of the officer's actions. At a hearing held that day, Lewis's trial counsel stated he had attempted to subpoena Switzer that morning and received a response from the Concord Police Department reporting that Switzer was on administrative leave and unavailable. The prosecutor opposed the *Brady* motion, and the trial court denied it, finding the requested information to be immaterial because Switzer would not be testifying at trial, Switzer's statements were not relied upon by the officers who were testifying, and Lewis had failed to file a *Pitchess*[4] motion before trial.[5]

---

[3] Lewis also admitted he had been twice convicted of car theft.

[4] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). *Pitchess* allows a defendant to obtain discovery of law enforcement personnel records upon a sufficient showing of good cause. (*Id*. at pp. 537-540.)

[5] There is no indication in the record that Lewis either filed a motion to compel discovery or requested a continuance to secure Switzer's trial presence.

On April 3, 2014, nine days after the jury returned its verdict, the Contra Costa District Attorney filed an information against Switzer, charging him with two counts of residential burglary, one count of commercial burglary, one count of elder abuse, and one count of obtaining a controlled substance by fraud. These offenses allegedly occurred about a year after Lewis was arrested, during the period of October 1, 2013, to February 2, 2014. Within a month of the information's filing, Switzer pleaded no contest to each count.

A few weeks after Switzer's plea, Lewis moved for a new trial on his conviction for evasion. He argued that if his *Brady* motion had been granted he would have been able to present evidence at trial that "Switzer had committed several moral turpitude felonies" and "had a serious drug addiction." He also pointed to a news article in a local paper reporting that Switzer had a serious drug addiction. According to Lewis, this evidence would have supported his claim that he fled the police not with a wanton disregard for safety but rather out of fear of Switzer's threat to release the dog.

The trial court denied the motion. It concluded there was no *Brady* violation because the evidence of Switzer's criminal wrongdoing was immaterial. The court ruled it was not reasonably probable that this evidence would have changed the outcome of the trial because Switzer's credibility was not at issue (since Switzer did not testify), Greenfield's trial testimony was consistent with Switzer's preliminary hearing testimony, and Lewis's claim he fled out of fear of the dog lacked credibility.[6] Nonetheless, the court found that the evidence about Switzer "constitute[d] prior misconduct involving moral turpitude that may have been 'favorable' to the defense as impeachment evidence." It also found that Lewis "acted with reasonable diligence in locating the new evidence," reasonably "expected the prosecution to have called . . . Switzer as a witness," reasonably believed "he did not need to subpoena" Switzer for trial, and only learned two days after

_____

[6] The trial court acknowledged it erred at trial when it ruled that Lewis had waived his right to discovery under *Brady* by failing to file a *Pitchess* motion before trial. But it found that the error did not entitle Lewis to a new trial because the evidence at issue was immaterial.

5

the trial started that Switzer was "unavailable because he was on administrative leave." The court made a point of "reiterating that [it did] not in any way countenance the prosecutor's failure to voluntarily disclose the information to the defense."

## II.
## DISCUSSION

Lewis contends that his convictions for vehicle theft and evasion must be reversed because his *Brady* motion and motion for new trial were improperly denied. He claims the prosecution withheld evidence favorable to his defense and material to his innocence because it showed that Switzer was addicted to a heavy opiate and supported his habit through burglaries, using his status as a police officer to gain access. Although we have serious concerns whether the prosecution satisfied its discovery obligations, we conclude there was no *Brady* violation because it is not reasonably probable that the jury would have acquitted Lewis had it been permitted to consider this evidence.

Under *Brady*, the prosecution violates a defendant's federal due process rights when it suppresses evidence material to the defendant's guilt or punishment, regardless of the good faith belief of the prosecution. (*Brady*, *supra*, 373 U.S. at p. 87.) Prosecutors have a duty to disclose "material exculpatory evidence whether the defendant makes a specific request [citation], a general request, or none at all [citation]." (*In re Brown* (1998) 17 Cal.4th 873, 879.) There are three elements to a *Brady* violation: (1) the state withholds evidence, either willfully or inadvertently, (2) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching, and (3) the evidence is material. (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282.) As to the last element, "[e]vidence is material if there is a reasonable probability its disclosure would have altered the trial result." (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1132.) Put another way, the defendant must show "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Kyles v. Whitley* (1995) 514 U.S. 419, 435.) "Materiality includes consideration of the effect of the nondisclosure on defense investigations and trial strategies. [Citations.] Because a constitutional violation occurs only if the suppressed evidence was material by

6

these standards, a finding that *Brady* was not satisfied is reversible without need for further harmless-error review." (*Zambrano*, at pp. 1132-1133.)

After independently reviewing the sealed documents concerning Switzer, we cannot conclude that there was a *Brady* violation because the evidence of Switzer's misconduct, although egregious, is immaterial to Lewis's guilt and does not undermine our confidence in the verdict. It is simply not reasonably probable that the jury would have acquitted Lewis of either charge had it been presented with this evidence.

As for Lewis's conviction for vehicle theft, it was supported by overwhelming evidence that was unrelated to Switzer. It was undisputed that the Saturn was taken from Devenuta without permission and the car's plates were stolen from another vehicle. Lewis's defense, which the jury apparently did not believe, was that Lewis repaired the Saturn for a friend and was unaware it had been stolen. Switzer's misconduct had no bearing on this defense, and it therefore strains credulity to argue that the jury's verdict finding Lewis guilty of vehicle theft would have changed if it had been presented with evidence of this misconduct.

As for Lewis's conviction for evasion, the evidence of Switzer's misconduct is immaterial for several reasons. Lewis argues that evidence of Switzer's crimes and drug addiction would have corroborated his claim that he fled not with a wanton disregard for safety but out of a fear of Switzer's threat to release the dog. At the outset, and although we need not decide the question, we are dubious that Lewis's alleged fear of the dog could constitute a viable defense under the established facts. There is nothing necessarily inconsistent about being afraid and at the same time disregarding the safety of others. The trial court recognized as much when it stated that any fear Lewis had when he fled arose "simultaneously to his own awareness of the risks he was taking while operating the vehicle in a manner that was in wanton disregard for safety." (Boldface omitted.) There was ample evidence for the jury to conclude that, fearful or not, Lewis still drove with "willful or wanton disregard for the safety of persons or property." (Veh. Code § 2800.2, subd. (a).)

But even if Lewis's fear could be considered a valid defense, it is not reasonably probable that Lewis would have been acquitted of the evasion charge if the jury had heard evidence related to Switzer's misconduct. At trial, the only person to testify about the content of Switzer's allegedly threatening announcements over the public address system was Lewis. If Lewis could have somehow introduced at trial Switzer's testimony from the preliminary hearing, the jury would have heard that Switzer warned Lewis after the chase commenced that the dog would be released if Lewis tried to run. This testimony would have given the jury *more*, not less, reason to convict. Although it is true that evidence related to Switzer's misconduct may have badly damaged Switzer's credibility, it is also true that Switzer's testimony at the preliminary hearing was consistent with Greenfield's testimony at trial that Lewis fled because the officers turned on their overhead lights, not because of a public address system announcement by Switzer.

Furthermore, Lewis's testimony was not credible. Lewis claimed he fled in the Saturn because Switzer threatened to release the dog. But Lewis's safety from the dog would have been secured by simply remaining in the Saturn or, as the trial court put it, "behind heavy metal doors." Instead, he eventually exposed himself to the dog by leaving the car and fleeing on foot. Given the jury's conclusion that Lewis was driving a stolen car on the night of the arrest, it is far more plausible that Lewis fled to evade the police because he feared prosecution, not the dog.

Moreover, it is unlikely the jury would have doubted Switzer's account even if Switzer had testified and had been impeached because, as we have mentioned, his story was corroborated by Greenfield. Greenfield testified that he pulled up behind Switzer and Lewis before the high-speed pursuit began, when Lewis was driving below the speed limit. According to Greenfield, Lewis fled because the pursuing officers turned on their overhead lights, not because of a public address system announcement by Switzer. Although Greenfield testified he heard Switzer make a couple of announcements over his public address system, he maintained that these announcements were made after the chase began. Regardless of Switzer's testimony and potential impeachment, Greenfield's

8

testimony contradicts Lewis's claim that he fled because Switzer threatened him with the dog.

Thus, we conclude that there was no *Brady* violation, and the authority cited by Lewis does not compel a different result. In *People v. Uribe* (2008) 162 Cal.App.4th 1457, the court found the prosecution's suppression of a video of a sexual assault response team examination constituted a *Brady* violation. (*Uribe,* at p. 182.) The court held that the suppressed video was material "based upon the relative weakness (*sans* medical evidence) of the prosecution's case, coupled with the unfairness to defendant in his being required to respond to medical testimony with limited and inferior photos [of the victim] when far superior and numerous photographic evidence in the form of the [sexual assault response team] video should have been made available to him." (*Ibid.*) In contrast, the prosecution's case here was strong, and the suppressed evidence was not central to Lewis's defense. The other cases cited by Lewis, including *In re Steele* (2004) 32 Cal.4th 682, are also inapposite. In *Steele*, the court held that the prosecution is obligated to disclose potentially exculpatory material upon the defendant's request, even "if [the evidence's] exculpatory nature would not otherwise be apparent to the prosecution." (*Id.* at p. 700.) The court, however, did not hold that the denial of such a request amounts to a *Brady* violation where, as here, the evidence is determined to be immaterial.

In concluding there was no *Brady* violation, we do not hold that such a violation can never be established when a prosecutor withholds evidence of misconduct by an arresting officer who does not testify at trial. We merely conclude that under the facts of this case the evidence of Switzer's misconduct was immaterial to Lewis's guilt or innocence, and it is not reasonably probable that the jury would have acquitted Lewis if it had known about the misconduct.

Nor do we condone the prosecution's conduct. Although we conclude there was no *Brady* violation, we are concerned that the prosecution failed to satisfy other discovery obligations. To begin with, the parties and the record do not explain why the prosecution's final witness list was not provided to the defense until the first day of trial.

9

(See §§ 1054.1, subd. (a), 1054.7 [disclosure of witness list must be made 30 days before trial absent prosecution's showing of good cause or "immediately" if "information becomes known" less than 30 days beforehand].)  The record does not reveal any legitimate reason for the prosecution to have waited until then to inform the defense that Switzer, the arresting officer and a main prosecution witness at the preliminary hearing, would not be called at trial when it had known since early March 2014 that he was on administrative leave for misconduct.  To us, the delay smacks of gamesmanship.  By waiting until the last minute to convey the information, the prosecution denied Lewis an opportunity to respond to it effectively.  Even if we accept that the prosecution believed it had no duty to reveal evidence of Switzer's misconduct, we can find no justification in the record for the prosecution's tardy disclosure that Switzer would not be called as a witness.

More importantly, we are unconvinced by the prosecution's insistence that it had no obligation to reveal any information related to Switzer's misconduct.[7]  California's criminal discovery statutes require the prosecution to disclose "[a]ny exculpatory evidence" to the defense (§ 1054.1, subd. (e)), which our Supreme Court has explained is *not* limited to evidence that is ultimately determined to be material:  "The showing that defendants must make to establish a violation of the prosecution's duty to disclose exculpatory evidence differs from the showing necessary merely to receive the evidence. . . .  To prevail on a claim the prosecution violated this duty, defendants challenging a conviction . . . have to show materiality, *but they do not have to make that showing just to be entitled to receive the evidence before trial*."  (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901, italics added.)  In other words, materiality is relevant

---

[7] In "early March 2014" the Deputy District Attorney acting as trial counsel notified the Chief Assistant District Attorney that Switzer had been placed on administrative leave, and it was the Chief Assistant's decision to remove Switzer from the witness list.  The Chief Assistant did so apparently based on his conclusions, first, that all the information available to the District Attorney's Office pertaining to Switzer's misconduct was confidential investigatory material and, second, that no evidence needed to be revealed under any authority, including "the Criminal Discovery Statute."  We question both of these conclusions but recognize that they were not made by trial counsel.

10

in considering a claimed discovery violation after the trial has occurred, but it does not govern the scope of the duty to disclose in the first place, which encompasses all exculpatory evidence. We understand that whether exculpatory evidence includes impeachment evidence may be unsettled (see *Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 378), but evidence related to Switzer's misconduct was relevant not only to impeach Switzer's testimony but also to support Lewis's story that he ran from a police officer who threatened him for illegitimate reasons.[8] We cannot accept that Lewis was not entitled to *any* evidence related to this misconduct. Although there might have been some pertinent information that could not be revealed because of the confidential criminal investigation of Switzer (see § 1054.7), the prosecution's failure to disclose even the mere fact that Switzer was on administrative leave denied Lewis a full opportunity to develop potential arguments and case strategy, including consideration of whether to call Switzer as a witness himself.

We recognize it is not always easy for prosecutors to know before trial whether evidence may be exculpatory, and evidence can fall within a continuum ranging from clearly exculpatory to clearly nonexculpatory. But based on the record before us, at least some evidence related to Switzer's misconduct falls on the side of needing to be disclosed. Thus, although we conclude there was no *Brady* violation, we join the trial court in not condoning the prosecution's conduct. We think it worth reminding prosecutors that their criminal-discovery obligations are broader than their *Brady* obligations and that the People's interest is not to win convictions but instead to ensure that justice is done. In our view, this interest is served through a faithful adherence to discovery obligations and, in case of doubt, erring on the side of disclosure and

---

[8] As the Attorney General acknowledges, if Lewis had known about the evidence he might have argued that Switzer's actions in pursuing and arresting Lewis were "caused by or related to his drug addiction, or by his commission of commercial burglaries." She points to the "high barriers" that Lewis would have faced to "unpack that theory for the jury," but by not revealing any information about Switzer and by excluding Switzer from the witness list on the first day of trial, the prosecution denied Lewis any meaningful opportunity to develop such a theory, high barriers or not.

11

preserving the appearance of fairness.  (See *Kyles v. Whitley*, *supra*, 514 U.S. at pp. 439-440; *People v. Superior Court* (*Greer*) 19 Cal.3d 255, 266.)

### III.
### DISPOSITION

The judgment is affirmed.


_____
Humes, P.J.


We concur:


_____
Margulies, J.


_____
Banke, J.

Trial Court:                      Contra Costa County Superior Court

Trial Judge:                     Honorable Clare M. Maier

Counsel for Appellant:        Rodger Paul Curnow, under appointment by the First District Appellate Project

Counsel for Respondent:       Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Eric D. Share, Laurence K. Sullivan, Supervising Deputy Attorneys General