Filed 10/19/20  P. v. Iliya CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C084631 |
| v. | (Super. Ct. No. 15F00128) |
| DAUDA HUDU ILIYA, | |
| Defendant and Appellant. | |

A jury convicted defendant Dauda Hudu Iliya of three counts of unlawful possession of a firearm and one count of unlawful possession of ammunition.  The trial court sentenced defendant to an aggregate one year four months in prison.

Defendant now contends (1) the People violated *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*) by failing to disclose exculpatory information in the sealed portion of a search warrant affidavit; (2) we should examine the sealed portion of the affidavit to determine whether the trial court complied with *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*) and properly denied his motion under *Franks v. Delaware*

1

(1978) 438 U.S. 154 [57 L.Ed.2d 667] (*Franks*); and (3) the trial court erred in denying his motion for severance.

We conclude (1) the evidence defendant claims the prosecution should have disclosed was not material under *Brady*; (2) defendant did not make a motion under *Hobbs*, and he was not entitled to an evidentiary hearing under *Franks* because he did not make the requisite showing; and (3) defendant's severance challenge is forfeited, but in any event the joint trial did not result in gross unfairness depriving him of a fair trial or due process. We will affirm the judgment.

BACKGROUND

Acting on a confidential informant tip and after some investigation, City of Sacramento police officers surveilled the house at 168 Cedar Rock Circle. Officer Kelli Streich was positioned across the street and about a house over to the south. She described what she saw via radio to Officer Ryan Trefethen, who took notes of Officer Streich's reports. Officer Michael Severi, another member of the surveillance team, prepared an affidavit to obtain a search warrant for the house based in part on Officer Streich's observations. We describe Officer Streich's observations in the discussion, *post*, to the extent they are relevant to the contentions on appeal.

Officers executed a search warrant at 168 Cedar Rock Circle. Codefendant Vernon Tidwell's girlfriend Brianna M. exited the house after 15 to 20 minutes of announcements directing the occupants of the house to come out. Tidwell, Tidwell's 17-year-old brother D., and defendant's brother A. came out of the house 10 minutes later.

Police found cups containing apparent marijuana residue, a calculator, a digital scale, baggies, and .9 grams of dried marijuana on the dining room table. A nine-millimeter semiautomatic Ruger pistol with 13 live rounds of ammunition was located in a drawer under the oven. A .25-caliber semiautomatic Lorcin pistol with seven live rounds of ammunition was hidden in a cereal box in the cabinets above the oven.

2

There was also a .22-caliber AK-47 assault rifle in a station wagon parked in the attached garage. The station wagon, which had not been registered for several years, was last registered to defendant. Officers found defendant's wallet and driver's license in a dresser in the garage. The address on defendant's driver's license was 168 Cedar Rock Circle.

Officers also found a loaded .25-caliber semiautomatic Phoenix Arms pistol and a bag containing hundreds of rounds of .22-caliber ammunition in a bedroom that appeared to be the master bedroom. In a different bedroom, officers seized a Pringles can with a hidden compartment and marijuana residue, a gun cleaning kit, three live rounds of .25-, .44- and .40-caliber ammunition, Brianna M.'s driver's license, a pill bottle with Tidwell's name, and Tidwell's RT pass. No fingerprints or DNA tied defendant or Tidwell to the firearms.

Keys to the house were found in Tidwell's pocket. A large tin containing over $1,025 in cash was found on Tidwell's brother, D. Tidwell told an officer that D. was not involved with any of the illegal items found in the house.

Police contacted defendant around the corner from the house during the search. At trial, the prosecution played an audio recording of a statement made by defendant as he sat in the back of a police vehicle during the search. Defendant said, "if somebody walks out of that garage with something like an AK or some cannon. Oh, I understand now. It all makes sense. It was a fucking set up." The trial court instructed the jury that it could not consider defendant's statement about an AK but it could consider the statement about a cannon in deciding the charged offenses against defendant because, as we will explain in part II *post*, as a discovery sanction against the People, the trial court dismissed the firearm possession charge against defendant that related to the AK-47 assault rifle, and limited the jury's consideration of the unlawful possession of ammunition charge against defendant to the ammunition for the handguns. All charges against Tidwell remained.

The trial court instructed the jury not to consider defendant's out-of-court statement against the other defendant.

At trial, Brianna M. testified that Tidwell stayed in the guest bedroom of the house a few days a week and that defendant stayed mainly in the garage or on the living room couch.

Testifying as an expert on illegal marijuana sales, Officer Trefethen opined in response to a hypothetical tracking the facts of the case that those facts indicated marijuana sales. He explained that firearms were commonly associated with marijuana sales because people who engaged in such sales had large sums of money and were often robbed.

The parties stipulated that defendant and Tidwell had previously been convicted of a felony.

The jury convicted defendant of unlawful possession of the Phoenix Arms, Lorcin, and Ruger handguns (Pen. Code, § 29800, subd. (a)(1) -- counts one, three and four)[1] and unlawful possession of ammunition (§ 30305, subd. (a)(1) -- count two). The jury convicted Tidwell on all counts. Defendant received an aggregate sentence of one year four months in prison.

DISCUSSION

I

Defendant contends the People violated *Brady* by failing to disclose exculpatory evidence in the sealed portion of Officer Severi's search warrant affidavit which, together with Officer Severi's in camera testimony, indicated that in the approximately 32-hour period between a confidential informant's report to police and the search, someone moved the AK-47 assault rifle from a back bedroom of the house to the garage.

---

[1] Undesignated statutory references are to the Penal Code.

4

Defendant claims the evidence was exculpatory because there was no evidence linking him to the interior of the house.

In *Brady*, the United States Supreme Could held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady, supra*, 373 U.S. at p. 87.) The Supreme Court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused [citation], and that the duty encompasses impeachment evidence as well as exculpatory evidence, [citation]. . . . Moreover, the rule encompasses evidence 'known only to police investigators and not to the prosecutor.' [Citation.] In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.' [Citation.]" (*Strickler v. Greene* (1999) 527 U.S. 263, 280-281 [144 L.Ed.2d 286] (*Strickler*).)

There are three components of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler, supra*, 527 U.S. at pp. 281-282.) To establish prejudice, the defendant must show that the suppressed evidence was material to the issue of guilt or innocence, i.e., there is a reasonable probability that, had the evidence been disclosed to the defense, the verdict would have been different. (*Ibid.*; *People v. Hoyos* (2007) 41 Cal.4th 872, 917-918 (*Hoyos*), disapproved on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 641-642 and *People v. Black* (2014) 58 Cal.4th 912, 920; *People v. Salazar* (2005) 35 Cal.4th 1031, 1043.)

The defendant bears the burden of showing materiality. (*Hoyos, supra*, 41 Cal.4th at pp. 917-918.) He or she "must show that 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the

5

verdict.' " (*People v. Lewis* (2015) 240 Cal.App.4th 257, 263)  We independently review the question whether a *Brady* violation occurred.  (*People v. Masters* (2016) 62 Cal.4th 1019, 1067.)

Even if we assume the first two elements of a *Brady* violation are established, defendant fails to show a reasonable probability of a different result had the prosecution disclosed evidence of the assault rifle's previous location inside the house.  Although there was evidence defendant stayed not only in the garage but also inside the house, the transfer of the assault rifle from inside the house to the garage would be material only if defendant remained accused of the counts relating to the assault rifle.  But the firearm possession count against defendant relating to the assault rifle was dismissed and the possession of ammunition count against him was limited to ammunition associated with the handguns.  The other firearm possession counts relate to the handguns, whereas the confidential informant statement the trial court determined might be exculpatory only related to the assault rifle and the ammunition associated with it.  On this record, defendant fails to demonstrate a reasonable probability that the jury would have returned a different verdict on the counts relating to the handguns and associated ammunition had the prosecution disclosed to defendant evidence that the AK-47 assault rifle had been moved from a bedroom to the garage during the approximately 32-hour period between the confidential informant's report to police and the search.  Defendant's appellate claim fails because he has not shown that the evidence at issue was material under *Brady*.

Defendant argues the prosecutor's failure to disclose the confidential informant's statement about the earlier location of the AK-47 assault rifle prejudiced him because had the prosecutor disclosed that evidence, the trial court would not have admitted People's exhibit 3, the audio recording of defendant's statement from the backseat of a police vehicle.  We disagree.

Defendant stated in People's exhibit 3, "if somebody walks out of that garage with something like an AK or some cannon.  Oh, I understand now.  It all makes sense.  It was

6

a fucking set up." Although the prosecutor argued before trial that defendant's statement was relevant to his knowledge of the presence of the assault rifle in the garage, after the trial court dismissed the count relating to the assault rifle, the prosecutor argued that the statement was also relevant to the unlawful possession of the nine-millimeter Ruger handgun. The prosecutor reasoned that the Ruger was a very large frame handgun, consistent with a "cannon." The trial court agreed, finding a reasonable inference that defendant's statement about "some cannon" in People's exhibit 3 related to a firearm. Accordingly, defendant fails to show that the trial court would have ruled differently on the admission of People's exhibit 3 had the prosecutor disclosed the confidential informant's statement about the assault rifle to the defense.

## II

Defendant asks us to examine the sealed portion of Officer Severi's search warrant affidavit to determine whether the trial court complied with *Hobbs, supra,* 7 Cal.4th 948 and properly denied his motion under *Franks, supra,* 438 U.S. 154.

## A

Officer Severi's search warrant affidavit was based in part on Officer Streich's surveillance observations. During the trial, Officer Streich initially testified that she saw short-stay visitors and observed defendant enter and exit the house. On cross-examination she admitted that she could not see the front door from her position, but she concluded the people entered the house because she saw them walk through the front gate and to the end of a concrete area where she lost sight of them. She said that based on what she saw and how far the people walked, she believed the people entered the house. With the exception of Tidwell and an unidentified male, who remained at the location for over two and a half hours, the people she saw remained at the property for one to six minutes only. Officer Streich admitted it was possible that a person who walked through the front gate and disappeared from her view could have walked into the front door or a door of the garage. She explained that she previously testified she could see the front

door from her observation point because that was what she recalled. However, she had since driven by the house and concluded that she could not have seen the front door from her surveillance position.

Tidwell announced an intent to file a motion to traverse the search warrant pursuant to section 1538.5, subdivision (h) and *Franks, supra*, 438 U.S. 154, based on Officer Streich's changed testimony.[2] Defendant did not make a request under *Hobbs, supra,* 7 Cal.4th 948 for the trial court to review the sealed portion of the search warrant application. But the trial court reviewed the sealed portion and opined that there was information within it that may be exculpatory to defendant. The trial court conducted an in camera hearing with the prosecutor to discuss its concern. The prosecutor said he did not know the content of the sealed portion of the affidavit.

In a subsequent hearing, the trial court disclosed to defense counsel that its review of the sealed portion of the search warrant affidavit caused it to be concerned that *Brady* material had not been disclosed to defendant and Tidwell. The trial court said the application of Evidence Code sections 1041 (privilege against disclosure of confidential informant's identity) and 1042 (adverse finding when a claim of privilege is sustained) was also an issue. The prosecutor told defense counsel the portion of the search warrant affidavit that was of concern to the trial court related to information that the assault rifle had been moved from a bedroom to the garage sometime within days prior to the search. The prosecutor argued that *Brady* did not apply because the fact someone moved the assault rifle to the garage was not exculpatory, was not suppressed by the government, and was information that was available to the defendants. Nevertheless, the prosecutor said out of an abundance of caution, the People would be open to dismissing count two

---

[2] Section 1538.5 authorizes a motion to suppress evidence obtained as a result of a search on grounds including that there was no probable cause for the issuance of the warrant.

8

(unlawful firearm possession relating to the assault rifle) and count five (unlawful possession of ammunition) against defendant.

Defendant and Tidwell moved to dismiss all charges against them based on an asserted *Brady* violation. They also filed motions to traverse the search warrant and to suppress evidence obtained from the search based on Officer Streich's changed testimony pursuant to section 1538.5 and *Franks*.

Following a second in camera hearing during which the judge questioned Officer Severi, the trial court ruled that the confidential informant was a material witness who could testify in a manner that would benefit defendant on the issue of guilt. The trial court ordered disclosure of the confidential informant's identity. It concluded that the People had a duty to discover such identity under section 1054.1, subdivision (e) (requiring the prosecutor to disclose exculpatory evidence in his or her possession or if he or she knows it to be in the possession of the investigating agencies), but noted that the People had invoked their privilege of nondisclosure under Evidence Code section 1042. Finding a reasonable probability under Evidence Code section 1042 that nondisclosure of the informant's identity might deprive defendant of a fair trial on counts two and five, and because the information the informant would provide was limited to the assault rifle which was the subject of count five, and the .22-caliber ammunition in count two was uniquely connected to the assault rifle, the trial court dismissed count five against defendant and ultimately limited jury consideration on count two against defendant to the ammunition pertaining to the handguns. Because evidence relating to the assault rifle and its ammunition had already been presented, the trial court admonished the jury that it no longer needed to decide count five against defendant; that it could not consider certain evidence in the count two ammunition possession charge against defendant; and that it could not consider the portion of defendant's out-of-court statement about an AK; but all other counts against defendant and all other evidence remained for its consideration.

9

The trial court further instructed that there was no change in the jury's consideration of all counts and evidence against Tidwell.

With regard to the *Franks* motions and motions to traverse the search warrant brought by defendant and Tidwell, the trial court found no evidence that Officer Streich's observations, as recorded in the search warrant affidavit, were knowingly and intentionally false or made with reckless disregard for the truth. The trial court said Officer Streich made the statements at issue believing they were true. It found that Officer Streich's inference of short-stay, narcotics-related traffic was reasonable based on the duration of each visitor's stay at or near the front door area and the number of short stay visitors during the surveillance period. It further determined that even if it set aside the statements by Officer Streich, the sealed portion of the affidavit provided sufficient basis to establish probable cause for the issuance of the warrant.

B

Defendant asks us to determine whether the trial court complied with *Hobbs, supra,* 7 Cal.4th 948. The defendant in *Hobbs* sought disclosure of sealed portions of a search warrant application relating to her home and sought to quash (i.e., challenge the probable cause finding) and traverse the warrant (i.e., attack the veracity of the confidential informant's statements). (*Id.* at pp. 954-955, 957.) The portions of the search warrant affidavit to which the defendant sought access were sealed to protect the identity of a confidential informant. (*Id.* at pp. 954-955.) The Court in *Hobbs* described the procedure a trial court should follow in order to strike a fair balance between the People's privilege to refuse disclosure of a confidential informant's identity and the defendant's limited discovery rights in connection with a challenge to the validity of a search warrant when any portion of a search warrant affidavit is sealed and the defendant seeks to initiate a subfacial challenge. (*Id.* at pp. 971-975.)

*Hobbs* does not apply here because, as defendant's trial counsel acknowledged, defendant did not make a motion under *Hobbs*. He did not request an in camera review

10

of the sealed portion of the search warrant affidavit, did not challenge the sealing of a portion of that affidavit, and did not seek disclosure of the sealed portion of the affidavit or the confidential informant's identity.

C

Defendant also asks us to determine whether the trial court properly denied his motion under *Franks, supra,* 438 U.S. 154. Defendant moved to traverse or quash the warrant on the ground that Officer Streich's statements, which are incorporated in the portion of the search warrant affidavit that was not sealed, were false or made with reckless disregard of the truth. Defendant requested an evidentiary hearing under *Franks* to determine the veracity of Officer Streich's statements and whether there was sufficient information to support a probable cause finding in the absence of her assertedly false statements.

In *Franks*, the United States Supreme Court held that although an affidavit supporting a search warrant is presumed to be valid, a defendant is entitled to an evidentiary hearing on the veracity of the affidavit if he or she makes a substantial preliminary showing that (1) the affidavit contains statements that are deliberately false or were made with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause. (*Franks, supra,* 438 U.S. at p. 155-156, 171; *People v. Luttenberger* (1990) 50 Cal.3d 1, 10, 21 [search warrant affidavit is presumed truthful].) To obtain a *Franks* evidentiary hearing, the defendant must point out specifically the portion of the warrant affidavit that is claimed to be false or made with reckless disregard for the truth. (*Franks, supra,* 438 U.S. at p. 171.)

If the defendant makes the preliminary showing of perjury or reckless disregard and if, setting aside the material that is false or made with reckless disregard, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no evidentiary hearing is required. (*Franks, supra,* 438 U.S. at pp. 156, 171-172.) If the defendant establishes by a preponderance of the evidence, at the evidentiary hearing, the

allegation of perjury or reckless disregard, and if with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and any evidence seized pursuant to the warrant must be suppressed. (*Id.* at p. 156.)

We review the denial of a *Franks* hearing de novo. (*People v. Sandoval* (2015) 62 Cal.4th 394, 410.) We will uphold the trial court's factual findings if they are supported by substantial evidence. (*People v. Costello* (1988) 204 Cal.App.3d 431, 441.) " '[F]or the purpose of finding those facts "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power . . . .' " (*Ibid.*)

In retesting the search warrant affidavit after striking out misstatements and adding material omissions, we keep in mind that in reviewing a magistrate's finding of probable cause, we accord great deference to the magistrate's determination. (*Illinois v. Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527]; *People v. Kraft* (2000) 23 Cal.4th 978, 1041 (*Kraft*).) The task of the magistrate issuing a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." (*Gates,* at pp. 238-239 [magistrate may draw reasonable inferences from the material supplied by the affiant].) The sufficiency of the search warrant affidavit is evaluated in light of the totality of the circumstances. (*Id.* at p. 238.)

Probable cause means a fair probability that a search would uncover wrongdoing; it does not require an actual or prima facie showing of criminal activity. (*Illinois v. Gates, supra*, 462 U.S. at pp. 235, 243, fn. 13; see *Kraft, supra,* 23 Cal.4 at p. 1040.)

12

Probable cause deals " 'with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " (*Gates,* at p. 231.)  Standards such as preponderance of the evidence and proof beyond a reasonable doubt have no place in an issuing magistrate's decision.  (*Id.* at p. 235.)

The trial court found that Officer Streich did not deliberately make a false statement or speak with reckless disregard for the truth in reporting that various people entered the house at Cedar Rock Circle.  Substantial evidence supports the trial court's factual findings.  Based on Officer Streich's observations, she believed the people who arrived at the house during her surveillance entered the house or made contact with someone who was inside the house.  There was no evidence before the trial court that Officer Streich reported that visitors had entered the house while seeing or believing otherwise.  With regard to the trial court's finding that Officer Streich did not act with reckless disregard for the truth, substantial evidence supports the trial court's conclusion that Officer Streich reasonably inferred from her observation of multiple visitors walking up a path leading to the front door, disappearing from view for several minutes and then departing down the same path and leaving the area, that the visitors entered the house or made contact with an occupant of the house.  There was no evidence that Officer Streich entertained serious doubts as to the truth of her statements.  (*People v. Diaz* (1992) 3 Cal.4th 495, 524 [affiant did not act intentionally or recklessly where the record did not show that he knew the fact stated in his affidavit was incorrect]; *People v. Anderson* (1983) 149 Cal.App.3d 1161, 1165-1166 [misstatement in an arrest warrant affidavit was not reckless where there was no evidence demonstrating the statement was " 'made with conscious indifference to whether it is true or false' "].)  Instead, Officer Streich believed her inference of entry into the house was correct.

Even if defendant had demonstrated that Officer Severi's search warrant affidavit contained deliberately false statements or statements made with reckless disregard for the

13

truth, we conclude based on our review of the entire search warrant affidavit that Officer Streich's statement that visitors entered and exited the house was not necessary to the finding of probable cause, and under the totality of the circumstances presented in the affidavit there was a fair probability that evidence of illegal drug sales and firearms possession would be found at the Cedar Rock Circle house. (*People v. Kershaw* (1983) 147 Cal.App.3d 750, 758-760 [information from an informant, police observation of activities at the defendant's home and the defendant's narcotics arrest record established probable cause for a search].) In addition to the detailed information provided by the confidential informant, observation of defendant's and Tidwell's presence and short-stay activity at the property and defendant's and Tidwell's criminal records, officers found evidence of unlawful drug sales transactions and illegal possession of firearms during the search. "[A]lthough the probable cause for a search cannot be supported by the results of the search, the results can properly be used to support the truthfulness of the statements in the search warrant affidavit where their veracity has been attacked in connection with a motion for an evidentiary hearing under *Franks*." (*People v. Benjamin* (1999) 77 Cal.App.4th 264, 268; see *id.* at pp. 275-277.) The trial court did not err in denying defendant's *Franks* motion.

## III

Defendant also contends that the trial court erred in denying his motion to sever his trial from that of Tidwell.

## A

Defendant moved in limine for a separate trial. His trial counsel argued that the case against defendant for the guns was weak and the gun in the garage was "probably the big concern." Tidwell did not object to a joint trial.

The trial court denied the motion. Among other things, the trial court said it appeared that both defendants had access to the house and the garage and were similarly situated in their potential liability as to the guns; therefore, there was no danger of "a

14

spill-over effect" from a strong case unfairly strengthening a weak case. The trial court noted the evidence linking defendant to the house.

The trial court conducted an Evidence Code section 402 hearing in response to defendant's concern about whether Officer Streich saw defendant enter the house, as opposed to the garage, because there were two doors accessible from the front courtyard of the house. Officer Streich testified at the hearing that the front door of the house was "set back" and "to the side" and was not visible from the street. Nevertheless, she said she saw defendant go through the front door, and he entered and exited the same door each time during her surveillance. Officer Streich believed the door was the front door because she used that door during the execution of the search warrant. While she did not recall seeing any other door at the front of the house, Officer Streich conceded that if there was a door to the garage at the front of the house, it was possible she was mistaken about defendant entering the front door.

The trial court found that defendant entered the house through the front door multiple times during the surveillance. That fact along with the presence of his wallet and car in the garage and DMV records showing he resided at the Cedar Rock Circle house satisfied the trial court that defendant resided at the house and not just the garage.

Contrary to her testimony at the Evidence Code section 402 hearing, at trial Officer Streich admitted she could not see the front door from her surveillance position. Defendant did not renew his motion to sever.

B

Expressing a legislative preference for joint trials, subject to a trial court's broad discretion to order severance (*People v. Thompson* (2016) 1 Cal.5th 1043, 1079 (*Thompson*)), section 1098 provides in pertinent part, "[w]hen two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials." " '[J]oint trials "play a vital role in the criminal justice system." [Citation.] They promote efficiency and "serve the interests

15

of justice by avoiding the scandal and inequity of inconsistent verdicts." [Citation.]' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 378-379 (*Bryant*).)

We review a trial court's denial of severance for abuse of discretion, based on the facts before the trial court when it ruled on the motion. (*Thompson, supra,* 1 Cal.5th at p. 1079.) "[E]ven if a trial court acted within its discretion in denying severance, ' "the reviewing court may nevertheless reverse a conviction where, because of the consolidation, a gross unfairness has occurred such as to deprive the defendant of a fair trial or due process of law." ' " (*Ibid.*; see also *People v. Burney* (2009) 47 Cal.4th 203, 237.) The defendant bears the burden of establishing that the joint trial was grossly unfair and denied him or her due process of law. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 597.)

Defendant does not challenge the trial court's denial of his in limine motion for severance. Instead, he contends that looking at what actually happened at the joint trial, the failure to sever his trial resulted in gross unfairness to him. When a motion to sever is based on developments that occur during trial, the defendant must renew his motion to sever or is barred from raising the issue on appeal. (*People v. Homick* (2012) 55 Cal.4th 816, 848, fn. 21; *People v. Ervin* (2000) 22 Cal.4th 48, 68.) Defendant did not renew his motion to sever during the trial. Thus, he may not raise his appellate claim. But even if he could, we would conclude that defendant has not shown any unfairness or due process violation.

Unfairness may result where a "defendant may be swept up in a much more compelling case against codefendants." (*Bryant, supra*, 60 Cal.4th at p. 383.) But here the prosecution presented independent evidence connecting each defendant to the house, where firearms, ammunition and indicia of unlawful drug sales were found. The case against one defendant was not significantly stronger or weaker than the other. (See *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 151.) And defendant and Tidwell presented essentially the same defense. This was also an appropriate case for joint trial

16

because defendant and Tidwell were charged with the same crimes as to the handguns, arising from the same events.  (*Bryant, supra,* 60 Cal.4th at p. 379.)  And the trial court instructed the jury to separately consider the evidence as it applied to each defendant and to decide each charge for each defendant separately.  Defendant has not established that gross unfairness depriving him of a fair trial or due process resulted from his joint trial with Tidwell.

## DISPOSITION

The judgment is affirmed.


       /S/                

MAURO, Acting P. J.

We concur:


     /S/               

DUARTE, J.


     /S/               

HOCH, J.